ENRIQUE GONZÁLEZ y OTROS, demandantes y recurridos, *v.* BENIGNO ALICEA y OTROS, demandados y recurrentes.

*Número:* RE-89-106 *Resuelto:* 4 de febrero de 1993

640

*Jorge L. Martínez*, de *Goldman & Antonetti*, abogado de los recurrentes; *Marcos Ramírez Lavandero* y *José Enrique Colón Santana*, abogados de los recurridos.

El Juez Presidente Señor Andréu García emitió la opinión del Tribunal.

PER CURIAM:

I

El 25 de febrero de 1955 nueve (9) distinguidos ciudadanos, entre ellos los abogados A. Cecil Snyder, José Trías Monge y Félix Ochoteco, Jr., incorporaron la Sociedad para Asistencia Legal, Inc. (en adelante la Sociedad). Anclada en la Sec. 11 de nuestra Carta de Derechos, Const. E.L.A., L.P.R.A., Tomo 1, la Sociedad se organizó con el fin de "promover la justicia para los insolventes económicos, facilitándoles servicios de abogado para garantizar la igual protección de las leyes y para alentar la fe en la justicia". Artículo Cuarto de los Artículos de Incorporación de la Sociedad para Asistencia Legal, Apéndice, pág. 168 (en adelante Artículos de Incorporación). Véase J. Trías Monge, *El sistema judicial de Puerto Rico*, San Juan, Ed. U.P.R., 1978, págs.

236–238. Dicha Sociedad operaría como una corporación sin fines de lucro.(¹)

En cuanto a los miembros que compondrían dicha Sociedad, los Artículos de Incorporación dispusieron solamente "[q]ue las condiciones para la admisión de socios son: Ser persona de buena reputación; estar interesada en la buena y eficiente administración de la justicia; y pagar la cuota que se fije en el Reglamento". Artículo Séptimo de los Artículos de Incorporación, *supra*. Por su parte, el Reglamento de la Sociedad para Asistencia Legal de Puerto Rico estableció tres (3) categorías de socios, a saber, regulares, patrocinadores y honorarios, y le impuso a los dos (2) primeros una cuota anual de $12 y $25, respectivamente.(²) Los honorarios no tendrían que pagar cuota alguna.

Finalmente, en los Artículos de Incorporación se limitó a nueve (9) el número de directores y se dispuso que:

---

(¹) La admisión y el ejercicio de la abogacía, así como de otras profesiones, están estrictamente limitadas mediante legislación y reglas a aquellos individuos que han sido autorizados a practicar dicha labor. Generalmente, se prohíbe que las corporaciones practiquen el Derecho. *B. Muñoz, Inc. v. Prod. Puertorriqueña*, 109 D.P.R. 825, 827 (1980). *Cf. Rasa Eng. Corp. v. Daubón*, 86 D.P.R. 193, 196–197 (1962). Se pretende evitar que, mediante el esquema corporativo, esas entidades controladas por personas que no son abogados, advengan al ejercicio de la profesión directa o indirectamente. Por no ser abogados licenciados, dichas personas estarían fuera del poder de regular la profesión que tiene este Tribunal. También se teme que la lealtad que ha de tener un abogado con su cliente se confunda con la fiducia que le debe a la corporación que lo emplea. Véanse: Anotación, *Restrictions on Right of Legal Services Corporation or "Public Interest" Law Firm to Practice*, 26 A.L.R.4th 614 (1983); 1A *Fletcher Cyc. Corp.* Sec. 112.10 (Perm. ed. 1993).

No obstante, se ha permitido, *como excepción*, que se incorporen entidades con el propósito de proveerle ayuda legal a los indigentes. Este es el caso de la Sociedad para Asistencia Legal.

(²) El Reglamento definió las tres (3) categorías de la manera siguiente:

"(a) *Regulares*: Los que asistan a las reuniones para las cuales sean convocados y presten los demás servicios y ejerzan las funciones que por este Reglamento o por acuerdo de asamblea de socios les sean señalados.

"(b) *Patrocinadores*: Lo serán quienes interesados en el sostenimiento de la Sociedad, contribuyan económicamente a la forma que más adelante se dirá; disponiéndose que con las excepciones descritas en este Reglamento, los derechos y obligaciones de los Patrocinadores serán las mismas de un socio Regular.

"(c) *Honorarios*: Lo serán las personas así designadas por la Junta de Directores, *motu propio* [sic] o por recomendación de una asamblea general de socios, en ambos casos debido a destacados méritos ciudadanos afines con los propósitos de la Sociedad." Art. 4 del Reglamento de la Sociedad para Asistencia Legal de Puerto Rico, Apéndice, pág. 252.

El Reglamento de la Sociedad será aprobado y subsiguiente-
mente enmendado por la Junta de Directores, la cual se com-
pondrá de nueve socios. En la asamblea anual de socios se ele-
girán para la Junta Directiva tres socios que sean funcionarios
del Estado Libre Asociado de Puerto Rico, tres socios que per-
tenezcan al Colegio de Abogados de Puerto Rico, y tres cuales-
quiera otros socios. Artículo Noveno de los Artículos de Incor-
poración, *supra,* pág. 169.

En cuanto a este particular, el Reglamento de la Socie-
dad para Asistencia Legal de Puerto Rico, al igual que los
Artículos de Incorporación, señalaba que los socios, en
asamblea general, elegirían a los miembros de la Junta de
Directores de la Sociedad para Asistencia Legal de Puerto
Rico (en adelante la Junta) —Art. 6 del Reglamento de la
Sociedad para Asistencia Legal de Puerto Rico, Apéndice,
pág. 254— pero le confirió a la Asamblea General de Socios
la facultad para enmendar su contenido, a través de una
convocatoria que incluiría el texto de la enmienda con no
menos de treinta (30) días de anticipación. Art. 37 del Re-
glamento de la Sociedad para Asistencia Legal, *supra,* pág.
249.

Luego, el 5 de noviembre de 1985, se enmendó el Regla-
mento de la Sociedad para Asistencia Legal de Puerto Rico
en cuanto a los extremos siguientes, entre otros:

a. Se eliminó toda referencia a los socios de la
corporación.

b. Se determinó que, en adelante, la Junta eligirá cada
director por un término de tres (3) años. Art. 5 del Regla-
mento de la Sociedad para Asistencia Legal de Puerto Rico,
según enmendado, Apéndice, pág. 271.

c. Se estableció que el reglamento sería enmendado por
la Junta. Art. 36 del Reglamento de la Sociedad para Asis-
tencia Legal de Puerto Rico, según enmendado, *supra,* pág.
288.

No obstante, los Artículos de Incorporación permanecie-
ron inalterados en cuanto a estos aspectos.

Así las cosas, en y antes de 16 de diciembre de 1987, los

sesenta y tres (63) demandantes solicitaron ser admitidos como socios de la corporación en conformidad con el Artículo Séptimo de los Artículos de Incorporación, *supra*, pág. 168. En sus cartas, cada uno señaló que era ciudadano de Puerto Rico, gozaba de buena reputación y estaba comprometido con la buena y eficiente administración de la justicia. Además, se incluyó el pago de $12.00 para cubrir la cuota para los socios regulares de la Sociedad.

Cinco (5) días después, la Junta se reunió y resolvió enmendar los Artículos de Incorporación.(³) La enmienda se presentó en el Departamento de Estado el 23 de diciembre, es decir, dos (2) días después de la reunión de los directores y una semana después de que los demandantes solicitaran su membresía. La medida enmendó el Artículo Séptimo, disponiendo lo siguiente:

### SEPTIMO

La Junta de Directores tiene autoridad para invitar, según considere necesario y razonable, de tiempo en tiempo, personas para que sean miembros de esta Corporación. Los miembros serán personas de buen carácter moral y tendrán una buena reputación como personas públicamente preocupadas con una eficiente administración de la justicia. Las personas invitadas, de acuerdo con los criterios establecidos por la Junta de Directores, no podrán tener intereses, personalmente o de cualquier otra forma, contrarios a los propósitos o a la administración de la Corporación.

Los miembros constituirán el Consejo de Miembros de la Sociedad para Asistencia Legal de Puerto Rico. Noventa días después de su establecimiento, el Consejo se reunirá y eligirá la Junta de Directores de la Sociedad para Asistencia Legal. El Consejo deberá celebrar una reunión anual durante la cual con-

---

(³) Alega la parte demandada que dicha enmienda no se aprobó con la intención de impedir que los demandantes lograran acceso a la Sociedad para Asistencia Legal de Puerto Rico (en adelante la Sociedad) como miembros, sino que es el resultado de un largo proceso de reestructuración institucional que se inició en 1983. A esos efectos, incluyeron las correspondientes minutas corporativas que demuestran ese desarrollo.

siderarán [sic] los asuntos traidos [sic] ante su consideración, si alguno. La Junta de Directores, según se considere necesario y conveniente, nombrará comités ejecutivos compuestos por miembros, que tendrán autoridad para dar consejos y recomendar asuntos a la Junta, según lo requiera la Junta de tiempo en tiempo. Certificado de Incorporación de Sociedad para Asistencia Legal de Puerto Rico, Inc., según enmendado, Apéndice, pág. 249.

El 4 de enero de 1988 el Lcdo. Benigno Alicea Alicea, Director Ejecutivo de la Sociedad para Asistencia Legal de Puerto Rico (en adelante el Director), devolvió los cheques y giros, y rechazó las solicitudes a membresía, aduciendo que "(a) partir de 1985 y posteriormente, tanto el Reglamento como los Artículos de Incorporación de la Sociedad sufrieron enmiendas, a tenor con la Ley General de Corporaciones, que dejaron sin efecto las disposiciones por [los solicitantes] citadas en su[s] carta[s]".

No conformes, los solicitantes rechazados presentaron una demanda e interdicto preliminar y permanente contra el Director y el Presidente de la Sociedad para Asistencia Legal de Puerto Rico, Lcdo. Arturo Negrón García.(⁴) Los demandantes cuestionaron la estructura interna de la Sociedad y las actuaciones de su Junta. Alegaron, además, una ausencia total de fiscalización de los componentes de la Junta. También solicitaron que se ordenara su admisión como socios.

El Tribunal a quo celebró tres (3) conferencias preliminares en las cuales fomentó el que las partes exploraran las posibilidades de llegar a un acuerdo. En la primera de ellas se recomendó que los demandados reconsideraran las solicitudes de los demandantes a ser socios en vista de que, al momento en que los demandantes solicitaron admisión, aún no se había efectuado la enmienda a los Artículos de Incorporación que le concedía facultad a la Junta para "in-

---

(⁴) El pasado viernes 10 de abril de 1992, el licenciado Negrón García y los restantes dos (2) directores de la Sociedad, renunciaron a sus puestos.

vitar" a los miembros de dicha entidad. En la segunda conferencia con antelación a la vista, los demandados informaron que la Junta reconsideraría las peticiones de miembro que hicieron los demandantes.

El 7 de abril de 1988 los demandados presentaron una moción de desestimación, acompañándola de un memorando de derecho y una certificación del Director. Posteriormente, el 30 de agosto de 1988, los demandados denegaron nuevamente la solicitud para la admisión como socios de los demandantes y explicaron que la Sociedad estaba desarrollando el concepto de un cuerpo de socios compuestos por representantes de las instituciones con intereses y experiencias que de alguna forma intervienen con la labor de la Sociedad, consistente ella en brindarle representación legal a los indigentes.

En la tercera conferencia sobre el estado del caso, el tribunal informó que si para el 15 de noviembre de 1988 las partes no habían llegado a un acuerdo, "se lo informaran [sic] al Tribunal por la vía telefónica y entonces el Tribunal entrará a analizar la Moción de Desestimación y Oposición que se ha presentado en este caso". Minuta del 1ro de noviembre de 1988, Apéndice, pág. 313. Las partes realizaron un último intento de negociación que se extendió más allá de la fecha concedida por el Tribunal y, resultando éste infructuoso, se le informó al tribunal. Así, el 18 de enero de 1989, el juez de instancia (Hon. Gilberto Gierbolini, Juez) resolvió la controversia por vía de sentencia sumaria. Ordenó, entre otras cosas, que todos los demandantes fueran admitidos como miembros regulares de la Sociedad y declaró nulas las enmiendas a los estatutos de 1985 que eliminaban el capítulo relativo a los socios. Posteriormente se denegó la reconsideración solicitada por los demandados.

No conformes, los demandados recurrieron en revisión ante nosotros. Plantearon cuatro (4) errores. De ellos, los

recurrentes recalcaron dos (2) como los más importantes, a saber:

1. Erró el tribunal al emitir una sentencia sumariamente sin notificación previa.

2. Erró el tribunal al ordenar la admisión inmediata de los demandantes como miembros de la Sociedad sin una evaluación previa del cumplimiento de los requisitos de admisión.

Como consecuencia de la renuncia en pleno de la Junta, emitimos una Resolución el 22 de abril de 1992, en la que ordenamos la organización de una Junta provisional. Le concedimos todos los poderes y las facultades que le confieren los Artículos de Incorporación y los estatutos de la Sociedad hasta tanto se constituya la nueva Junta conforme a lo que hoy resolvemos.

## II

Alegan los recurrentes que al momento de emitirse la sentencia sumaria, ninguna de las partes había sido advertida de dicha intención del tribunal ni se había presentado una moción que la solicitara, ni se dio oportunidad a las partes para presentar evidencia en apoyo de sus respectivas posiciones.

Repetidamente, hemos dicho que el objetivo primordial del mecanismo de la sentencia sumaria, recogido en la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, es el de resolver justa, rápida y económicamente los pleitos en que, por no existir una controversia real de hechos, resulta innecesario celebrar un juicio en su fondo. *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 D.P.R. 538 (1991); *Mercado Vega v. U.P.R.*, 128 D.P.R. 273 (1991); *Nassar Rizek v. Hernández*, 123 D.P.R. 360 (1989); *Roth v. Lugo*, 87 D.P.R. 386, 392 (1963). A pesar de su enorme utilidad, hemos advertido que, antes de resolver una controversia por

la vía sumaria, el juzgador habrá de discernir cuidadosamente al respecto, pues "mal utilizada, puede prestarse para despojar a un litigante de 'su día en corte', principio elemental del debido procedimiento de ley". *Roig Com. Bank v. Rosario Cirino*, 126 D.P.R. 613, 617 (1990). Sólo se debe dictar una sentencia sumariamente cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes a la controversia. *Roth v. Lugo*, supra, pág. 397.

■ Por ser un remedio realmente excepcional, los tribunales no deben resolver los pleitos mediante el mecanismo de la sentencia sumaria sin habérsele solicitado por alguna de las partes. Aunque es cierto que nuestras reglas no lo prohíben expresamente, poderosas razones de política pública fundadas en el debido proceso de ley hacen necesario que, antes de dictarse la sentencia sumariamente, se observe el procedimiento que detalla nuestra Regla 36 de Procedimiento Civil, *supra*. Por la misma razón, la jurisprudencia que interpreta la Regla 56 de Procedimiento Civil federal (28 U.S.C.) —de donde procede la nuestra— señala que, de ordinario, los tribunales no emitirán una sentencia sumaria *sua sponte* (esto es, sin requerirlo alguna parte) o al menos hasta que el tribunal haya concedido a las partes una oportunidad razonable para responder a su intención de resolver el pleito sumariamente. 6 *Moore's Federal Practice* Sec. 56.14[1], págs. 56-186 a 56-187 (1988). El tratado de Wright y Miller recoge la doctrina que se ha establecido en la jurisdicción federal norteamericana:

> The major concern in cases in which the court wants to enter summary judgment without a Rule 56 motion by either party is not really one of power. As a practical matter, the court always can "invite" the appropriate party to move under Rule 56 when it thinks the case is ripe for summary disposition. Rather, *the question raised by the court's action is whether the party against whom the judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate*

*why summary judgment should not be granted. If the court pro-.*
*vides this opportunity, there seems to be no reason for preven-*
*ting the court from acting on its own. To conclude otherwise*
*would result in unnecessary trials and would be inconsistent .*
*with the objective of Rule 56 of expediting the disposition of*
*cases.* (Énfasis suplido y escolio omitido.) *Wright, Miller and*
*Kane, Federal Practice and Procedure: Civil 2d* Sec. 27.20, págs.
27–28 (1983).

En el presente caso, del expediente no surge que alguna parte solicitara que el pleito se resolviera mediante sentencia sumaria. Sin embargo, la Minuta de 11 de marzo de 1988 recogió el sentir del tribunal sentenciador durante las etapas tempranas del pleito: ·

El Tribunal considera además, que dispuesto del remedio preliminar, *no va a existir en el presente caso controversia de hechos*, por lo tanto *solicita* a los abogados de las partes que vayan haciendo un examen de los hechos relevantes que sean estipulables para examinar la posibilidad de dejar el caso sometido en base a [sic] la estipulación de hechos y a los memorandos de derecho que posteriormente radicarían [sic] las partes. (Énfasis suplido.) Minuta de 11 de marzo, Apéndice, pág. 291.

Es decir, *más de diez (10) meses antes de emitir la sentencia recurrida*, el tribunal ya había revelado su intención de resolver la contienda a base de la prueba documental sometida y por someterse, sin necesidad de celebrar un juicio en su fondo. Estimamos que dichas expresiones constituyen un aviso suficiente de que el pleito se resolvería por la vía sumaria, brindándole así una oportunidad razonable a ambas partes para responder a la intención del tribunal.[5] No encontramos, además, que existiera contro-

---

[5] Además, la recurrida señala que se celebró una reunión en cámara el 3 de enero de 1989 —quince (15) días antes de que se emitiera sumariamente la sentencia— durante la cual el tribunal a quo "expresó su opinión a los efectos de que no habiendo controversia de hechos, no teniendo las partes evidencia adicional que presentar, se dispondría del caso mediante sentencia sumaria. Ambas partes estuvieron de acuerdo con lo expresado ...". Oposición a Solicitud de Recurso de Revisión, pág. 10. La resolución del tribunal de instancia que rechazó la moción de reconsideración presentada por los demandados, a los efectos de que "[e]n cámara las partes some-

versia sobre algún hecho material que impidiera que el tribunal sentenciador emitiera su decisión sumaria, por lo que estamos en posición de revisar en sus méritos el dictamen recurrido.

## III

Plantean los recurrentes que el tribunal de instancia erró al ordenar la admisión de los demandantes como socios de la corporación. Compartimos con la sala sentenciadora la preocupación que existe sobre la composición, estructura y funcionamiento directivo e interno de la Sociedad.[6] Sin embargo, no podemos concurrir con que la solución al pleito sea ordenar que los sesenta (60) demandantes[7] sean admitidos como miembros de la Sociedad. Veamos.

El dictamen recurrido señala en una de sus conclusiones de derecho lo siguiente:

Una vez un solicitante peticiona membresía, la función de la Junta de Directores es meramente determinar si cumplía o no con los criterios. En virtud de que los demandantes cumplían con los mismos, era mandatorio a la Junta aceptarlos. ... Por tanto el papel de la Junta de Directores era meramente procesal y ministerial. Opinión y sentencia, Apéndice, pág. 19.

Creemos que dicha conclusión es incorrecta.

 En primer lugar, debe quedar claro que estamos

tieron el caso e informaron no tener prueba adicional", apoya la contención de los recurridos.

(6) No obstante, hemos notado que en Estados Unidos de Norteamérica, muchas corporaciones con fines no lucrativos tienen como cuerpo directivo una junta de directores que se autoperpetúa (*self-perpetuating*) y que frecuentemente elige a sus sucesores. *Developments in the Law-Nonprofit Corporations*, 105 (Núm. 7) Harv. L. Rev. 1578, 1582 n. 12 (1992).

(7) Las Lcdas. Margarita Cortijo y Margarita Coll desistieron de su reclamación el 11 de abril de 1988. Posteriormente, el Lcdo. Heriberto Sepúlveda hizo lo mismo.

ante una corporación con fines no lucrativos.([8]) Aunque en Puerto Rico no existe un estatuto independiente de la Ley General de Corporaciones, Ley Núm. 3 de 9 de enero de 1956 (14 L.P.R.A. secs. 1101–2507), para regularlas, dicha ley contiene algunas secciones que específicamente se refieren a ellas.([9]) Quizás la más importante de esas disposiciones, a los fines del presente recurso, es el subinciso (e) del Art. 401, que señala en parte que "[l]a dirección de los asuntos de cada corporación [con fines no lucrativos] que se organizare con arreglo a las disposiciones de este subtítulo, se regirá por lo prescrito en el certificado de incorporación". 14 L.P.R.A. sec. 1401(e). De ello surge que la ley le ha concedido a estas entidades sin propósitos lucrativos mayor deferencia y flexibilidad en cuanto a su operación y dirección, salvo que la propia ley disponga algo en contrario.

■ Nuestra Ley General de Corporaciones no regula la admisión de socios o miembros de corporaciones sin fines de lucro. Sólo el subinciso (a)(4) del Art. 102 de dicha ley, 14 L.P.R.A. sec. 1102(a)(4), ordena que las condiciones requeridas de los socios de tales corporaciones se consignen en su certificado de incorporación o se estipule que dichas condiciones figuren en sus estatutos. Siguiendo la liberalidad que el legislador quiso conceder a ese tipo de corporación —según el Art. 401(e)— nos parece razonable concluir, como se ha hecho en otras jurisdicciones norteamericanas, que:

In the absence of charter or statutory restrictions, a nonprofit

---

([8]) La misma se define como una corporación cuyos ingresos, si algunos, no podrán distribuirse entre sus miembros, directores y oficiales. *Fletcher Cyc. Corp.*, supra, Vol. 1, Sec. 68.05, pág. 919. Generalmente, a una corporación sin fines de lucro no le es permitido emitir acciones, pagar dividendos o hacer distribuciones de sus ingresos a miembros, directores u oficiales. Íd. Véase, también, Art. 102(a)(4) de la Ley Núm. 3 de 9 de enero de 1956 (Ley General de Corporaciones, 14 L.P.R.A. sec. 1102(a)(4).

([9]) Véanse, por ejemplo: los Arts. 102(a)(3), 102(a)(4), 102(b)(1), 401(e), 402(f) y 802(d)(2) de la Ley Núm. 3, *supra*, 14 L.P.R.A. secs. 1102(a)(3), 1102(a)(4), 1102(b)(1), 1401(e), 1402(f) y 1802(d)(2).

or nonstock corporation may determine who shall be admitted to membership, and how they shall be admitted. It may exclude any person whom it deems unfit for membership. Indeed, in the absence of restrictions, it may act arbitrarily, and exclude any persons it may see fit, *and the courts have no power to interfere.* (Énfasis suplido y escolio omitido.) 12A *Fletcher Cyc. Corp.* Sec. 5687, págs. 787–788 (Perm. ed. 1993).

De manera que, como regla general, una corporación con fines no lucrativos no puede ser obligada a aceptar como socio a todo aquel que solicite admisión. H.L. Oleck, *Nonprofit Corporations, Organizations, and Associations,* 4ta ed., Nueva Jersey, Ed. Prentice Hall, Inc., 1980, pág. 743.[10]

El lenguaje contenido en los Artículos de Incorporación vigentes al momento en que los demandantes solicitaron su admisión[11] no constituía un mandato para admitir a todo aquel que solicitara y cualificara de acuerdo con las condiciones. Dicha disposición sólo contenía los requisitos que todo solicitante debía reunir; no tenía el efecto de limitar el rol de la Junta de Directores a uno "meramente procesal y ministerial", como señala el ilustrado foro de instancia.[12]

---

[10]El comentarista Oleck señala que los tribunales han aprobado rechazos arbitrarios y que algunas veces, a manera de excepción, ordenan la admisión cuando el repudio se funda en el discrimen por razón de raza, color o creencia, o cuando están involucrados intereses de índole económica, como por ejemplo, cuando existe la necesidad de pertenecer a la entidad para poder trabajar. Véase H.L. Oleck, *Nonprofit Cortporations, Organizations, and Associations,* 4ta ed., Nueva Jersey, Ed. Prentice Hall, Inc., 1980, pág. 743, y casos allí citados.

[11] "SEPTIMO

"Que las condiciones para la admisión de socios son: Ser persona de buena reputación; estar interesada en la buena y eficiente administración de la justicia; y pagar la cuota que fije el Reglamento."

[12] Para fundamentar su decisión, el tribunal a quo citó el caso *Porterfield v. Black Bill & Doney Parks W. Users' Ass'n,* 210 P.2d 335, 337 (Ariz. 1949). En ese caso, el certificado de incorporación de una entidad que se dedicaba a suplir agua potable a ciertos lugares disponía lo siguiente:

" 'Any natural person who qualifies under the provisions hereinafter set forth in the By-Laws of this association and is a *bona fide resident* of the community shall be elegible to membership in this association ....' "

Por su parte, el estatuto corporativo señalaba que:

Desde el punto de vista del derecho de las obligaciones y los contratos, tampoco nos parece que el Artículo Séptimo de los Artículos de Incorporación, *supra*, estableciera un deber de dicha entidad a admitir como socio a todo aquel que cumpliera con las condiciones allí estipuladas. Como se sabe, en Puerto Rico las obligaciones nacen de la ley, de los contratos, de los cuasicontratos y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil, 31 L.P.R.A. sec. 2992. De entrada, valga señalar que no estamos ante ninguno de los dos (2) últimos supuestos. Tampoco se nos ha señalado ni hemos encontrado alguna ley que obligue a la Sociedad a admitir a los recurridos. Como ya dijimos, la Ley General de Corporaciones sólo ordena a los incorporadores a consignar en su certificado aquellas condiciones que se les requerirán a los socios o, en su defecto, estipular que las mismas se fijarán en los estatutos.

■ En cuanto al derecho de contratos, el Código Civil establece sus elementos —Art. 1213 (31 L.P.R.A. sec. 3391)— y dispone que el consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa y la causa que han de constituirle. Art. 1214 del Código Civil, 31 L.P.R.A. sec. 3401. Cabe plantearse si el Artículo Séptimo de los Artículos de Incorporación, *supra*, constituía una oferta, de forma tal que la aceptación de los recurridos

---

"Any natural person, a bona fide resident or owner of real property in Black Bill and Doney Parks, and a person to whom the services of this association will be beneficial, may become a member of this association."

Surge claramente que el lenguaje del certificado de incorporación y del estatuto en el caso *Porterfield v. Black Bill & Doney Parks W. Users' Ass'n*, supra, es marcadamente distinto al que motiva el pleito en el caso de autos. Mientras que en *Porterfield v. Black Bill & Doney Parks W. Users' Ass'n*, supra, el certificado y los estatutos disponen las condiciones para ser socio y establecen el compromiso de la entidad a conceder la membresía a todo aquel que cumpla con dichas condiciones, el certificado de la Sociedad para Asistencia Legal se limitó a establecer los requisitos. Resulta fácil entender por qué en *Porterfield v. Black Bill & Doney Parks W. Users' Ass'n*, supra, la corte concluyó que el papel de la Junta de Directores en cuanto a la admisión de socios era meramente ministerial.

constituyera una obligación de la primera a admitir a los últimos.

 La doctrina define la oferta como " 'una proposición unilateral que una de las partes dirige a la otra para celebrar con ella un contrato. ... [S]ólo hay oferta cuando el contrato puede quedar cerrado con la sola aceptación de la otra parte, sin necesidad de una ulterior declaración del que hizo la oferta' ". J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1978, T. II, Vol. 1, pág. 178. Los requisitos de la oferta son: (a) que sea completa y (b) que dé a conocer al destinatario la voluntad de obligarse: "[s]i la propuesta se ha emitido con la reserva, expresa o implícita, de la prestación final de consentimiento por el oferente ... no se tratará propiamente de una oferta." Íd., pág. 179. Véase, además, F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Madrid, Ed. Pirámide, 1976, págs. 377–378.

Una lectura al Artículo Séptimo de los Artículos de Incorporación, *supra*, revela que *el mismo no constituía una oferta, pues dicha cláusula nada ofrecía; a nada se comprometía la corporación.*[13] Solamente se expresaba de manera expositiva las condiciones necesarias para los socios, conforme lo requiere nuestra Ley General de Corporaciones. Ya que ni el derecho corporativo ni el derecho de las obligaciones y contratos cobija doctrina o precepto alguno que obligue a la Sociedad a admitir a los recurridos como miembros, procede revocar la sentencia que ordenó la admisión de los sesenta (60) demandantes.

---

[13] Véase esc. 12. Por las mismas razones, no estamos ante una estipulación a favor de tercero. Véanse: Art. 1209 del Código Civil, 31 L.P.R.A. sec. 3374; *A.L. Arsuaga, Inc. v. La Hood Const., Inc.*, 90 D.P.R. 104 (1964). Tampoco se trata de una declaración unilateral de voluntad. Sobre si esta última es fuente de obligaciones en Puerto Rico, *quaere*. Véanse: *Ramírez Ortiz v. Gautier Benítez*, 87 D.P.R. 497, 508 (1963); *Cervecería Corona, Inc. v. Tribunal Superior*, 99 D.P.R. 698 (1971); E. Vázquez Bote, *Tratado teórico, práctico y crítico de derecho privado puertorriqueño*, New Hampshire, Ed. Equity, 1991, T.V, Sec. 3.3, págs. 98–102.

## IV

En vista del resultado al cual hemos llegado, *la Junta de Directores provisional procederá sin dilación a constituir el Consejo de Miembros de la Sociedad para Asistencia Legal de Puerto Rico, en conformidad con lo dispuesto en el Artículo Séptimo del Certificado de Incorporación de la Sociedad para Asistencia Legal de Puerto Rico, según quedó enmendado mediante la Resolución de 21 de diciembre de 1987, cuyo Consejo se reunirá y eligirá la Junta de Directores de dicha corporación en la forma provista en dicho artículo.*

*Se dictará sentencia de conformidad.*

La Juez Asociada Señora Naveira de Rodón está conforme con las partes I, III y IV, y concurrió sin opinión escrita con la parte II. El Juez Asociado Señor Negrón García se inhibió.