Rodríguez Muñiz, Juez Ponente
*1102 TEXTOCOMPLETO DE LA SENTENCIA
Haydee Redondo Maymí, Angel L. Pérez Rodríguez y la Sociedad Legal de Gananciales compuesta por éstos, en representación de la menor Rubí H. Pérez Redondo (en adelante, los apelantes), presentaron recurso de apelación el 8 de noviembre de 2001. Solicitaron la revisión de la sentencia parcial emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, el TPI), el 28 de septiembre de 2001 y archivada en autos el 11 de octubre de 2001.
A continuación exponemos el trasfondo fáctico y procesal del caso.
I
Los apelantes son padres de tres menores de edad, los cuales cuentan con 14, 11 y 7 años, respectivamente. A principios del año 2001, los apelantes decidieron cambiar a sus hijos de la escuela en la cual cursaban estudios primarios.
El interés de los apelantes era matricular a sus hijos en una institución educativa, de la cual sus egresados tuvieran un alto índice de aprobación en la prueba conocida como el “SAT’ (“Scholastic Aptitude Test”). Este es el principal instrumento de evaluación, utilizado por la mayoría de las universidades en los Estados Unidos, para la admisión de sus estudiantes.
Los apelantes eligieron a Saint John’s School (en adelante, Saint John’s), pues según éstos investigaron, la misma cumplía con dicho requisito. Además, según los apelantes, ésta cuenta con similares acreditaciones y afiliaciones que la escuela en que anteriormente estaban matriculados sus hijos.
En consideración a lo anterior, los apelantes acudieron a Saint John’s y allí recibieron información con respecto a los pasos a seguir para solicitar la admisión de sus hijos a la misma.
Para el curso escolar que inició en agosto de 2001, los hijos de 14 y 11 años de los apelantes, fueron admitidos para los grados décimo y sexto, respectivamente, no así la menor de siete años de edad. Saint John’s explicó a los apelantes que la niña de siete años, llamada Rubí, no había pasado el examen de ingreso, bajo los criterios por ellos exigidos, para cursar el segundo grado.
Saint John’s expresó a los apelantes que, de acuerdo a la prueba de evaluación ofrecida a Rubí, ésta demostró poseer un nivel de lectura en inglés equivalente a nueve meses en “kinder” y de dos meses en primer grado en las matemáticas. Según surge de la sentencia apelada, ante las gestiones de los padres, Saint John’s accedió a ofrecer la prueba a la menor una segunda vez, la cual se administró el 3 de agosto de 2001. En esta ocasión, los resultados informados revelaron un aprovechamiento en lectura en inglés de seis meses en primer grado y en matemáticas, de nueve meses en primer grado. Ante esos resultados, Saint John’s informó a los padres que no admitirían a la menor al segundo grado; no obstante, le ofrecieron la opción de cursar el primer grado.
Inconformes con el ofrecimiento de Saint John’s, los apelantes acudieron a la escuela y solicitaron ver el expediente de la menor. Estos alegan que Saint John’s no les permitió ver la totalidad del mismo y que, de lo que pudieron observar, no existía ningún documento del cual se desprendiera la forma en que fueron corregidos los exámenes, sus parámetros de corrección, ni lo que pretenden medir los mismos.
Ante los hechos anteriormente narrados, los apelantes instaron demanda solicitando al TPI que dictara una orden de interdicto en contra de Saint John’s, en la que se obligara a ésta a aceptar a Rubí en el segundo grado. Además, solicitaron una compensación por los daños que, a raíz de las actuaciones de Saint John’s, alegan haber sufrido.
Una vez presentada la demanda, el 13 de agosto de 2001, el TPI notificó a las partes que celebraría una conferencia para atender asuntos relativos a la petición de interdicto preliminar. Orden de 13 de agosto de 2001, a *1103 la página 103 del apéndice de la apelación. Posterior a la celebración de dicha conferencia, Saint John’s presentó un escrito titulado Moción Solicitando Desestimación de Auto de Injunction y/o Demanda. En síntesis, Saint John’s argumentó que los hechos expuestos en la demanda solicitando el interdicto, no exponían una reclamación que justificara la concesión de un remedio; y que de acuerdo a la situación fáctica presentada, en derecho, no procedía la utilización del mecanismo de injunction. En específico, señalaron que en el caso de autos no existía la posibilidad de un daño irreparable. Véase a la página 108 del apéndice de la apelación.
El 20 de agosto de 2001, los apelantes presentaron su oposición a la solicitud de desestimación. Principalmente centraron su argumentación en que, de acuerdo a las leyes y reglamentos que rigen la otorgación de permisos para la operación de instituciones educativas en Puerto Rico, éstas están obligadas a tener reglamentos que regulen, entre otras cosas, los asuntos académicos de las mismas. Entre lo que se incluye, los requisitos de admisión, promoción, retención y graduación de estudiantes. Id. a la página 122 del apéndice de la apelación.
Los apelantes señalaron que Saint John’s no posee un reglamento de admisiones que cumpla con dichas exigencias legales. Indicaron, también, que la única información ofrecida por la escuela es una muy breve, de la que no se desprende qué peso en la evaluación tiene cada uno de los requisitos exigidos, tampoco qué puntuación se exige al estudiante en el examen de ingreso, ni cuales son los parámetros a seguirse en la corrección del mismo. Id.
Los apelantes argumentaron, además, que el proceso de solicitar ser considerado para admisión en una escuela privada es uno de tipo contractual. Señalaron que en el proceso de decidir cuáles eran los parámetros impuestos en los requisitos de admisión, ellos no pudieron negociar nada, por lo que la relación jurídica impuesta por Saint John’s, en su caso, es del tipo de un contrato de adhesión. Así que, como alegadamente la información provista por Saint John’s, en cuanto a los criterios de los exámenes de evaluación era vaga e imprecisa, el TPI debía ordenar a Saint John’s que aceptara a la niña en el segundo grado. Id. a la página 125.
Finalmente, los apelantes señalaron que el daño que.se pretende evitar con la solicitud de injunction es el impacto psicológico que puede generar en la niña la situación de que sus hermanos estén en otra escuela, o el tener que repetir un grado escolar que ya aprobó en otra escuela, lo que podría afectar su autoestima. Id.
Saint John’s sometió una réplica a la oposición de los apelantes, en la que aseguraron contar con parámetros evaluativos adecuados y que su institución cumple con todos los requisitos que la ley le exige para operar. Id. a las páginas 131-35. En un escrito final, los apelantes alegaron que Saint John’s tampoco ha cumplido con ciertas exigencias de la Middle States Association, con respecto a la formulación clara de las políticas y prácticas de las instituciones que ellos acreditan.
Una vez examinados los escritos de las partes, el TPI atendió la moción de desestimación presentada por Saint John’s como una de sentencia sumaria, a los efectos de resolver si procedía la petición de interdicto, y determinó que la reclamación de daños sería remitida al procedimiento ordinario. Sentencia Parcial de 28 de septiembre de 2001, a la página 4 del apéndice de la apelación.
El TPI determinó que en el caso de autos, la contención de los apelantes con respecto a que entre ellos y la Saint John’s se había perfeccionado un contrato, no era procedente. Indicó el tribunal que a lo sumo podría sostenerse que la escuela se comprometió, a través de la información que ofreció a los aspirantes, a realizar una evaluación conforme a los siguientes criterios: la administración de un examen sicométrico, con miras a examinar la idoneidad intelectual y emocional del candidato para enfrentar el grado interesado, y el empleo de un examen estandarizado para medir las aptitudes y destrezas académicas de éste. Según concluyó el TPI, esos métodos de selección fueron honrados y aplicados a la menor, y la misma no pudo satisfacer el nivel requerido. Id. a la página 14.
*1104 Con respecto al argumento de los apelantes, en el sentido de que Saint John’s no disponía de un reglamento que informara acerca de cómo se evaluaba el resultado de las pruebas y cuál era el índice mínimo, el TPI concluyó que esa no era una obligación a la que la escuela se hubiera comprometido. Id. a la página 15. No obstante, intimó que esa circunstancia no podría dar lugar a otro remedio que no fuera el que se le administrara una nueva prueba a la menor que contara con salvaguardas adecuadas, como informar el examen y su naturaleza con antelación, la nota de pase requerida, grado a ser promovida, y los criterios y parámetros utilizados en la corrección de la prueba. Id. a la página 16.
En atención a lo anterior, el TPI desestimó la petición de injunction solicitada.
Inconforme con dicha determinación, los apelantes acuden ante nos y señalan los siguientes errores:

“ERRO EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LOS REQUISITOS DE ADMISION NO SON UN CONTRATO ENTRE LAS PARTES.

ERRO EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE NO PROCEDIA EL INJUNCTION Y DESESTIMAR LA ACION INTERDICTAL SOLICITADA POR LA PARTE DEMANDANTE. ”

II
Como primer error, los apelantes sostienen que los requisitos de admisión que Saint Jonh’s informa a la ciudadanía, los cuales están contenidos en un documento titulado Saint John’s School A Profile, constituyeron entre ellos y la escuela un contrato. Este documento, en sus partes pertinentes, informa lo siguiente: “All candidates are required to submit a complete application and take an entrance examination. A psychometric evaluation completed by a psychologist is required for preschool through grade 5. Previous academic records, a letter of recommendation, and a birth certificate are also necessary for admission” Véase a la página 19 del apéndice de la apelación. En otra página del mencionado documento, se añade que será necesario someter una carta de recomendación, una trascripción de la escuela anterior, récord de inmunización y número de seguro social. Id. a la página 21.
Según argumentan los apelantes, la información que indica el mencionado documento constituyó una oferta, por parte de Saint John’s, de aceptar a la menor en la escuela, la cual contenía las condiciones exigidas. Entienden los apelantes que de esa información surgió un acuerdo de voluntades; éste es, que la menor cumpliría “con los requisitos exigidos por la escuela para su admisión y la escuela se comportaría conforme a lo esperado por los padres de Rubí; que su hija sería evaluada y a ellos se le informarían los parámetros utilizados para su evaluación y la nota requerida de pase en el examen. ” Escrito de Apelación, a la página 8.
Según razonan los apelantes, esta alegada oferta cumple con todos los requisitos, pues contiene todos los elementos del contrato y no requiere una nueva declaración de voluntad de la escuela. Id.
El Artículo 1206 del Código Civil, 31 L.P.R.A. see. 3371, señala que “[e]l contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. ”
De un análisis del texto del documento antes citado, no surge ninguna declaración que indique la idea de una obligación o un deseo de obligarse a algo en específico. No se indica en ningún lugar que el cumplimiento de los trámites que ahí se indican significa una admisión al programa de estudios e, inclusive, en todo momento se habla de candidatos. Tampoco la declaración menciona que los parámetros de evaluación serían revelados. En otras palabras, la manifestación es totalmente de tipo enunciativa; sólo expresa qué se requiere para ser considerado; y, desde luego, no exige una respuesta.
Con respecto al argumento de que el documento contenía una oferta, es preciso tomar en consideración lo siguiente:

*1105
“El Código Civil regula la manera en que se genera uno de los requisitos indispensables para la existencia de un contrato: el consentimiento contractual. El mismo provee que dicho consentimiento contractual se manifiesta mediante el concurso de la oferta y de la aceptación sobre la cosa y la causa que han de constituir el contrato. 31 L.P.R.A. See. 3401. Es decir, que el vínculo obligacional entre las partes surge del acuerdo de voluntades que se manifiesta con la oferta y la aceptación. Prods. Tommy Muñiz v. COPAN, 113 D.P.R. 517, 522 (1982). De ahí que su identificación sea tan importante, puesto que, una vez se ha dado la oferta y la aceptación, se ha creado un vínculo obligacional entre las partes. ”

Dada su importancia, es indispensable que la oferta reúna determinados requisitos:

“(a) debe ser completa, que es lo mismo que decir que debe contener todos los demás elementos del contrato que se proyecta; COPAN, supra, a la pág. 522.

(b) debe ser definitiva, es decir, no precisar ninguna nueva declaración de voluntad del oferente; ” Id.

En COPAN, citando al comentarista Puig Brutau, se señaló que “[s]ólo es verdadera oferta la que puede generar el contrato con la simple aceptación. ” Id.
Sobre el particular, la jurisprudencia de nuestro Tribunal Supremo ha reiterado que la oferta es: “una proposición unilateral que una de las partes dirige a la otra para celebrar con ella un contrato. Sólo hay oferta cuando el contrato pueda quedar cerrado con la sola aceptación de la otra parte, sin necesidad de una ulterior declaración del que hizo la oferta. Los requisitos de oferta son: a) que sea completa; y b) que de a conocer al destinatario la voluntad de obligarse”; “[s]i la propuesta se ha emitido con la reserva, expresa o implícita, de la prestación final del consentimiento por el oferente ..., no se trata propiamente de una oferta. ” González v. Alicea, 132 D.P.R. 638, 653 (1993).
Dicho de otro modo, sin una oferta completa no puede haber una aceptación definitiva que perfeccione el contrato. Vila & Hnos., Inc. v. Owens Illinois de P.R., 117 D.P.R. 825 834 (1986); COPAN, supra, a la página 522 (1982). Así, tendremos oferta cuando en ella se contengan los elementos esenciales para la formación del contrato, de tal modo que no sea necesario, para saber su contenido, un nuevo acuerdo de las partes cuando se haya producido la aceptación. COPAN, supra, a la página 522.
Aplicando las disposiciones de ley y las doctrinas sentadas por la jurisprudencia, concluimos que en la situación que exponen los apelantes no hubo una oferta que pudiera generar la formación de un contrato. Como apreció el TPI, la declaración contenida en el documento que los apelantes caracterizan como oferta, no es otra cosa que una convocatoria en la cual se anuncian cuáles son los requisitos de admisión, a los que los apelantes respondieron sometiendo a su hija a los mismos. Sentencia Parcial de 28 de septiembre de 2001, a la página 12 del apéndice de la apelación. La declaración ni siquiera establece cuál será el costo del servicio a prestar, siendo ello un elemento esencial para la formación del contrato. El desconocimiento de ese hecho motivaría, cuando menos, a la exteriorización de una nueva declaración de voluntad que contuviera dicho elemento.
En atención a los anteriores fundamentos, determinamos que el error señalado no fue cometido.
III
Como segundo error, los apelantes sostienen que incidió el TPI al denegar la solicitud de injunction.
El injunction es una orden judicial, la cual, ya sea en su carácter reparador o preventivo, prohíbe o compele a una persona la realización de determinada conducta, evitando así el perjuicio a los derechos de otra. Artículo 675 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 3521 (1990); Estado Libre Asociado v. Asociación de Auditores, et als., 99 J.T.S. 25, 664, opinión de 11 de marzo de 1999. Aunque el Código de Enjuiciamiento Civil define los contornos del recurso, 32 L.P.R.A. see. 3521 etseq., y existe abundante jurisprudencia interpretativa de estas disposiciones, los procedimientos del recurso de injunction están gobernados por lo dispuesto en la Regla 57 *1106 de las de Procedimiento Civil, 32 L.P.R.A. Ap. IH Véase Héctor A. Colón Cruz, Notas sobre Recursos Extraordinarios, Certiorari, Injunction, Mandamus, 42 Rev. Col. Ab. P.R. 445, 464 (1981). Las demás reglas son de aplicación supletoria. Corujo Collazo v. Viera Martínez, 111 D.P.R. 552, 556 (1981).
Aunque, de ordinario, se habla del recurso extraordinario de injunction, en realidad existen tres recursos diferentes que una parte promovente puede presentar ante el tribunal. Estos son el entredicho provisional, el injunction preliminar y el injunction permanente.
El entredicho provisional posee una naturaleza más extraordinaria, pues la premura de la ocurrencia de un daño irreparable o la continuación del existente puede dar pie a que el mandamiento judicial sea expedido sin necesidad de que el tribunal oiga a la otra parte. Exige la mayor discreción posible por parte del magistrado ante quien se presenta la solicitud. Asociación de Auditores, supra, a la página 664.
El injunction preliminar puede ser emitido en cualquier momento del pleito y se caracteriza por la pronta celebración de una vista donde las partes argumentan en tomo a la procedencia del recurso. Cobos Liccia v. DeJean Packing Co., Inc., 124 D.P.R. 897, 902 (1989). Se emite con el propósito de mantener el status quo entre las partes, hasta que se celebre el juicio en su fondo para, de esa manera, evitar que la conducta de la parte demandada convierta en académica la sentencia que posteriormente se dicte o que se le ocasionen daños de consideración al peticionario durante el transcurso del caso. Municipio de Loíza v. Sucn. Marcial Suárez, 2001 J.T.S. 87, 1378, Opinión de 11 de junio de 2001.
Para decidir si se expide o no este recurso extraordinario provisional, el tribunal debe ponderar los criterios que se enumeran a continuación: 1) la naturaleza de los daños que puedan ocasionársele a las partes de concederse o denegarse el injunction; 2) su irreparabilidad o la existencia de un remedio adecuado en ley; 3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; 4) la probabilidad de que la causa se tome académica de no concederse el injunction-, y 5) el posible impacto sobre el interés público del remedio que se solicita. Puerto Rico Telephone Co. v. Tribunal Superior, 103 D.P.R. 200, 202 (1975). Tales requisitos deben encontrarse presentes para poder conceder una solicitud de interdicto y corresponde a la parte promovente demostrar la existencia de los mismos. Id.
Finalmente, hay que tener presente la normativa enunciada por el Tribunal Supremo de Puerto Rico, que señala que la concesión de “una orden de injunction, injunction preliminar o entredicho provisional descansa en la sana discreción del tribunal, por lo que la decisión del mismo concediendo o denegando la orden no será revocada en apelación, a menos que se demuestre que dicho foro abusó de su facultad discrecional. ” Asociación de Auditores, supra, a la página 664; Delgado v. Cruz, 27 D.P.R. 877, 880 (1919).
IV
En la demanda presentada por los apelantes, éstos alegaron con respecto a los daños, que las actuaciones de Saint John’s, al no disponer de un reglamento que aclare los criterios de evaluación de la prueba de admisión ofrecida, eran arbitrarias y caprichosas. Demanda de 13 de agosto de 2001, a la página 83 del apéndice de la apelación. Expresaron que esa situación es una que afecta la salud mental de la menor al verse rechazada de ingreso a la escuela en la que están sus hermanos. Id. Añadieron en otro apartado, que los padres de la menor “se enfrentan a la situación de que esta [sic] se afecte por no poder estar con sus hermanos a los cuales está [sic] es bien apegada o por ser aceptada en un grado que ya ésta aprobóId. a la página 84. Indicaron, además, que todo ello la expone a sufrir daños irreparables, debido a que se afectaría su valía personal y autoestima. Id. Por último, expresaron que su interés era que el TPI determinara que Rubí cumplió con los requisitos exigidos por la escuela y que ésta sea aceptada en su segundo grado, ya que la menor proviene de una escuela tan cualificada y acreditada como Saint John’s. Id.
Posteriormente, los apelantes reiteraron dichas alegaciones en su escrito de oposición a la solicitud de desestimación de Saint John’s. Véase a las páginas 125-26 del apéndice de la apelación.
*1107 En su escrito de apelación, los apelantes manifestaron que el remedio de injunction en su caso, busca “evitar un daño a una menor, la cual no fue aceptada a cursar el segundo grado ... sin que a su [sic] padres se les informara la nota de pase del examen, los parámetros para su corrección .... ”. Escrito de Apelación a la página 15.
Analizados los argumentos de los apelantes, a la luz de los criterios que rigen la expedición de una orden de injunction, somos del criterio de que los mismos no han sido satisfechos, y éstos no han cumplido con su carga de establecer los mismos. Las razones expuestas por los apelantes son altamente especulativas. Estos han manifestado que la situación de la menor, al no haber sido admitida, es una que puede causar daños irreparables en la menor. Pero de ninguna manera han sustentado dicha alegación, más cuando se toma en consideración que la menor, desde agosto de 2001, está cursando el segundo grado en su anterior escuela, la que éstos admiten tiene las mismas cualificaciones y acreditaciones que Saint John’s. Tampoco los apelantes han demostrado que la naturaleza del daño que la menor sufrirá por la pérdida temporal de la compañía de sus hermanos durante horas de clases, es irreparable.
Con respecto a la posibilidad de prevalecer en los méritos de su acción; esto es, demostrar que los criterios de evaluación utilizados por Saint John’s eran inadecuados, los apelantes no han presentado evidencia o argumentos que militen en contra del sistema utilizado (IOWA TEST). Simplemente se han limitado en su recurso a someter evaluaciones de psicólogos clínicos que señalan que la niña posee un nivel de inteligencia normal alta y que al momento de ella cursar el primer grado, poseía las destrezas para satisfacer las exigencias del mismo. Evaluación del Dr. Iván F. Umpierre Vela, de 13 de octubre de 2001, a las páginas 25-29 del apéndice de la apelación. La otra evaluación indica que la menor está apta para cursar un segundo grado y recomienda que Saint John’s reconsidere su posición y ubique a la menor en dicho grado para validar si ésta puede responder a las exigencias académicas de. esa institución. Evaluación del Dr. Femando Medina, Id. a las páginas 30-33. No obstante, estos estudios no indican cuál es el nivel de desarrollo de la menor en las áreas de matemáticas e inglés.
Finalmente, debemos considerar que no habiendo los apelantes demostrado las posibilidades de prevalecer en los méritos, resultaría altamente impropio utilizar el remedio de injunction para ordenar que se admita a la menor en el segundo grado, para que luego, si éstos no vencen en el juicio ordinario, ésta tuviera que ser removida.
V
Por los fundamentos antes expuestos, se confirma la sentencia apelada.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2002 DTA 68
1. En el caso ante nos, la solicitud de entredicho provisional fue declarada no ha lugar por el TPI mediante la orden de 13 de agosto de 2001. Véase a la página 103 del apéndice de la apelación.
2. El injunction permanente, sobre el cual no abundaremos, es atendido por el tribunal siguiendo los trámites de un juicio ordinario. Díaz v. Vázquez, 19 D.P.R. 1155 (1913).
3. Véanse Determinaciones de Hechos 3 y 4 de la Sentencia Parcial, a la página 5 del apéndice de la apelación.