TEXTO COMPLETO DE LA RESOLUCION
En el presente recurso, el apelante solicita la revisión de la Sentencia emitida el 11 de febrero de 2000, en el caso PonceBank v. Memorial Products Company, Inc., Civil Número DCD-95-0447 (706), cuya copia de la notificación fue archivada en autos ese mismo día.
Por los fundamentos que expresamos a continuación, CONFIRMAMOS la Sentencia apelada.
*756 I
El 7 de marzo de 1990, mediante escritura pública número 2 .otorgada ante el notario Eugenio Otero Silva, Caparra Gardens, Inc. (Caparra), una subsidiaria de Poncebank, antes Ponce Federal Bank, F.S.B., le vendió a Prida Motors Corporation (Prida Motors) por el precio de $2,600,000.00, la siguiente finca:

“RUSTICA: Finca denominada actualmente Caparra Memorial Park, en el Barrio Pueblo Viejo del Municipio de Guaynabo, dedicada a cementerio, compuesta de once cuerdas y céntimo, o sea, cuatro hectáreas, treinta y dos áreas, y setenta y tres centiáreas, colindante: por el Norte, con la Sucesión Herminio Díaz y un camino vecinal de Guaynabo; por el Suri con Modesto Capiel y la Sucesión Sevilla; por el este, con un camino vecinal de Guaynabo; y por el Oeste, con Modesto Capiel y Severa Montes, separados por uña quebrada. Inscrita alfolio 18 vuelto del tomo 844 de Guaynabo, finca núm. 633, inscripción 21ra. ”

Prida Motors pagó $200,000.00 en el acto de la compraventa y, para evidenciar el precio aplacado, suscribió un pagaré hipotecario a favor de Caparra, o a su orden, por la suma principal de $2,400,000.00 pagadero en plazos durante un término de 15 años, con intereses a razón del 9% anual sobre el balance impagado hasta su completo final.
Para garantizar el principal de $2,400,000.00 y otros créditos del pagaré hipotecario, por concepto de intereses, costas y honorarios de abogados, Prida Motors constituyó hipoteca mediante la misma escritura pública número 2 sobre dicha finca, a favor de Caparra o los futuros tenedores del pagaré hipotecario. La hipoteca consta inscrita con rango de primera al folio 18vto. del tomo 844 de Guaynabo, finca 633, Inscripción 21ra.
En febrero de 1990, Prida Motors cambió su nombre a Cementerio Caparra Inc. y, posteriormente, cambió su nombre nuevamente a Prida Development Corporation (Prida Development). El 18 de septiembre de 1992, ante la falta de pago de Prida Development, Poncebank y Caparra instaron una acción en cobro de dinero y ejecución de hipoteca contra ésta en el tribunal de instancia.
El 20 de julio de 1994, el co-demandado, Angel L. Castro Carrasquillo (Castro), por sí y en su capacidad de Presidente de Prida, Caparra Memorial (Memorial) y Overall Profesional Services, Inc. (Overall), suscribió un acuerdo con Ponce Bank mediante el cual el banco desistía sin peijuicio de la acción de cobro de dinero y ejecución de hipoteca. Como parte del acuerdo, Prida Development, Memorial, Overall y Castro quedaron obligados con Ponce Bank a pagarle a este último $1,400,000.00 dentro de los próximos 180 días a partir de la fecha del otorgamiento del acuerdo como pago en finiquito de las deudas garantizadas por la propiedad en controversia. El acuerdo también dispuso que los deudores consentían en que, de incumplir con el pago en el término establecido, Ponce Bank y Caparra podrían ejercer todos los procedimientos legales pertinentes para el cobro de la deuda, más intereses al nueve por ciento desde el 20 de julio de 1994.
El 20 de noviembre de 1994, Prida Development y Memorial fueron fusionadas. Memorial sobrevivió a la fusión y aceptó de Prida Development todos sus activos y pasivos.
El 16 de enero de 1995, venció el término de 180 días que dispone el acuerdo sin que Memorial pagara la suma acordada. Ante estas circunstancias, Ponce Bank presentó una demanda en cobro de dinero y ejecución de hipoteca, el 9 de noviembre de 1995. Según estableció el tribunal de instancia en sus determinaciones de hecho, el día de la presentación de la demanda, Memorial, Overall y Castro adeudaban a Ponce Bank las siguientes cantidades, las cuales eran líquidas y exigibles:

"a) Principal-$1,400,000,00

b) Intereses hasta 8/11/95-$163,800.00

*757 c) Intereses a partir de 8/11/95 hasta su completo pago a razón de $350.00 diarios— (a computarse)

d) Costas, gastos y honorarios de abogados pactados en caso de ejecución-$109,466.00".

El 26 de diciembre de 1995, Memorial solicitó la paralización de los procedimientos en el tribunal de instancia, ya que había presentado una petición de quiebra ante el Tribunal Federal. Por su parte, el tribunal de instancia emitió una sentencia parcial en la que paralizó el caso con respecto a Memorial, en virtud de la protección que le otorga a éste la Sección 362 (a) del Código de Quiebras, el 20 de febrero de 1996. Ponce Bank, a su vez, solicitó la paralización de los procedimientos en cuanto a Overall y a Castro. Finalmente, el 15 de marzo de 1995, el tribunal de instancia paralizó por completo el caso hasta tanto la Corte de Quiebras resolviera la petición de quiebra presentada por Memorial; sin embargo, mantuvo su jurisdicción para reabrir el mismo a solicitud de la parte demandante.
El 1 de julio de 1998, el Banco Bilbao Vizcaya (BBV) adquirió todos los intereses de Ponce Bank mediante una venta de acciones. Por tal razón, BBV es el dueño actual y tenedor del pagaré hipotecario suscrito por Prida Development. El 30 de julio de 1998, la Corte de Quiebras emitió una Opinión y Orden en la que desestimó la petición de quiebra de Memorial. El 27 de agosto de 1998, BBV solicitó la reapertura del caso en el tribunal de instancia. Dicho tribunal señaló una vista sobre el estado de los procedimientos para el 22 de febrero de 1999. El 8 de febrero de 1999, BBV presentó una "Moción de Sentencia Sumaria" en la que solicitó el cobro de $1.7 millones, más intereses o la venta en pública subasta de la propiedad hipotecada a favor del banco. El 12 de febrero de 1999, el tribunal de instancia ordenó que la moción de sentencia sumaria fuera atendida en la vista sobre el estado de los procedimientos. Dicha orden fue notificada el 16 de febrero de 1999. La parte demandada, por su parte, no presentó oposición a la moción de sentencia sumaria.
El 22 de febrero de 1999 fue celebrada la vista sobre el estado de los procedimientos a la que asistió el co-demandado Castro sin su abogado. El tribunal le concedió a la parte demandada 20 días adicionales para que replicara a la moción de sentencia sumaria y le advirtió que de no replicar en el término concedido, acogería la sentencia sumaria solicitada y emitiría sentencia de conformidad. Los 20 días vencieron el 15 de marzo de 1999 sin que la parte demandada presentara su contestación a la moción de sentencia sumaria.
Posteriormente, la representación legal de la parte demandada renunció, y el 9 de abril de 1999, el tribunal le concedió 20 días a la parte demandada para que anunciara nueva representación legal y 20 días adicionales para que replicara a la moción de sentencia sumaria. Los 40 días adicionales concedidos a la parte demandada vencieron el 20 de mayo de 1999, sin que ésta presentara la contestación a la moción de sentencia sumaria del 8 de febrero de 1999.
El 3 de diciembre de 1999, el BBV presentó una "Moción Solicitando Sentencia", en la que señaló que cuando el caso fue presentado el 9 de noviembre de 1995, la deuda con el Banco era de $1,673,266.00, que al momento de la presentación de esa moción, la deuda había ascendido a $2,191,866.00, y que, al 31 de diciembre de 1999, la deuda ascendería a $2,201,316.00.
El 11 de febrero de 2000, el tribunal de instancia emitió sentencia sumaria en la que determinó que BBV, a base de los documentos que presentó y de las admisiones de los propios demandados, demostró que a la fecha de la demanda existía una deuda válida, ascendente a $1,400,000.00 de principal, $163,800.00 de intereses hasta el 8 de noviembre de 1995, intereses a partir del 8 de noviembre de 1995 hasta su pago total, y $109,466.00 de costas, gastos y honorarios de abogados; que estas sumas estaban vencidas, eran líquidas y exigibles; que las mismas no habían sido pagadas hasta la fecha; que BBV era acreedor de dichas sumas; y que los demandados eran los deudores. Por tanto, Instancia condenó a todos los demandados a pagarle solidariamente al BBV la cantidad de $2,201,316.00, que es la cantidad a la que ascendía la deuda al 31 de diciembre de 1999. El tribunal ordenó, además, la venta en pública subasta de la propiedad hipotecada que garantiza la obligación de los demandados con el BBV.
*758 No conforme con la determinación de instancia, los demandados presentaron recurso de apelación ante este Tribunal, el 13 de marzo de 2000. ’En el mismo, alegaron que erró el tribunal- de instancia ¿ emitir sentencia sumaria a favor del BBV sin considerar que existían controversias sobre hechos materiales que.ameritaban un juicio plenario.
Luego de examinar la totalidad del expediente ante nuestra consideración, estamos en posición de resolver. Veamos.
II
La Regla 36 de Procedimiento Civil, 32 L.P.R.A. Apéndice HI, Regla 36, codifica lo referente al mecanismo procesal de la sentencia sumaria. Dicho mecanismo tiene el propósito de facilitar la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales y, por tanto, no ameritan la celebración de un juicio en su fondo. Pilot Life Ins. Co. vs. Crespo Martínez, 136 D.P.R. 624, 632 (1994).
La parte promovente está en la obligación de demostrar, fuera de toda duda, la inexistencia de controversia real sobre todo hecho pertinente que, a la luz del derecho sustantivo aplicable, determinaría una sentencia a SU favor como cuestión de ley. López Stubbe v. Gus Lallande, 98 J.T.S. 9, a la página 523; Hurtado v. Osuna, 138 D.P.R. 801, 809 (1995); Soto Vázquez v. Rivera Alvarado, 97 J.T.S. 145, a la página 369; Rivera et al v. Superior Packing, Inc., et al., 132 D.P.R. 115, 133 (1992); Tello Rivera v. Eastern Airlines, 119 D.P.R. 83, 86 (1987). Es por ello que cuando existe una controversia en cuanto a hechos materiales, la sentencia sumaria no debe ser emitida y cualquier duda debe ser resuelta en contra de la parte promovente, Bonilla Medina vs. P.N.P. 96 J.T.S. 33, a la página 790; Cuadrado v. Santiago Rodríguez, 126 D.P.R. 272, 279 (1990). Utilizada de manera incorrecta, la sentencia sumaria puede despojar a un litigante de su día en corte, principio elemental del debido proceso de ley. González v. Alicea, Dir. Soc. Asist. Legal, 132 D.P.R. 638, 647 (1993).
Cuando existe una controversia bona fide de hechos, no procede que sea emitida una sentencia sumaria. Si al hacer su análisis, el tribunal alberga dudas sobre la existencia de una controversia de hechos, no puede emitir la sentencia sumaria, Cuadrado Lugo vs. Santiago Rodríguez, supra, a la página 279; Rodríguez Meléndez v. Sup. Amigo, Inc., 126 D.P.R. 117, 150 (1990).
Por otro lado, una parte no descarga adecuadamente su obligación procesal de derrotar una moción de sentencia sumaria, cuando no presenta documentos ni declaraciones juradas que pongan en controversia los hechos presentados por el promovente. PFZ Properties, Inc. v. General Accident Ins. Co., P.R., Ltd., 136 D.P.R, 881, 912-913 (1994); Rivera et al. vs. Superior Packing, Inc., et al., supra, a la página 133. Los jueces no están constreñidos por los hechos o documentos evidenciarlos que sean aducidos en la solicitud de sentencia sumaria. Estos deben considerar todos los documentos en autos, sean o no parte de la solicitud, de los cuales surjan admisiones hechas por las partes. Cuadrado Lugo v. Santiago Rodríguez, supra, a la página 280.
En fin, al emitir una sentencia sumaria, el tribunal deberá: (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como aquéllos que obren en el expediente del tribunal; (2) determinar si el oponente de la moción controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. Analizados estos criterios, el tribunal no emitirá sentencia sumaria cuando: (1) existen hechos materiales controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que acompañan la moción, una controversia real sobre algún hecho material; ó (4) como cuestión de derecho no procede. PEZ Properties, Inc. v. General Accident Ins. Co., P.R., Ltd., supra, a las páginas 913-914.
En el caso de autos, el tribunal de instancia estableció que tanto la obligación, como la falta de pago, surgen de documentos auténticos y de las admisiones hechas por los demandados en las contestaciones a la demanda. *759 El tribunal añadió que los demandados nunca manifestaron su oposición a la moción de sentencia sumaria presentada por el BBV y que, ante la falta de una controversia real relacionada con los hechos materiales del caso, el banco tenía derecho a que fuera emitida la sentencia sumaria a su favor.
Los demandados, por su parte, no señalaron, en su escrito de apelación ante este Tribunal, controversia alguna sobre los hechos materiales del caso. Lo único que argüyeron fue que no estaba claro a cuánto ascendía el monto total de la deuda. Tampoco explicaron porqué nunca presentaron su oposición a la moción de sentencia sumaria, a pesar de haber sido apercibidos por el tribunal de instancia en varias ocasiones.
Nuestro Tribunal Supremo ha establecido que la parte demandante, en una acción de cobro de dinero, sólo tiene que probar que existe una deuda válida, que la misma no ha sido pagada, que es la acreedora y que los demandados son los deudores. General Electric v. Concessionaires, Inc., 118 D.P.R. 32, 43 (1986). En el caso ante nos, el BBV prevaleció al presentar la moción de sentencia sumaria, ya que los hechos que demostraron cada uno de estos puntos no fueron controvertidos por la parte demandada. El Banco demostró que existía una deuda, que la misma era líquida y exigible, que era el acreedor de la misma y que los demandados eran los deudores. En vista de lo anterior, no erró el tribunal de instancia al emitir la sentencia sumaria a favor del BBV.
m
Por los fundamentos previamente expuestos, CONFIRMAMOS la Sentencia recurrida.
Lo acordó y manda el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General