Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| EL PUEBLO DE PUERTO RICO<br>Recurrido<br><br><br>v.<br><br><br>JESÚS RICARDO UBRI CUSTODIO<br>Peticionario | KLCE202401141 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan en Caguas<br><br>Caso Núm.<br>K LA2023G0137 al<br>K LA2023G0140<br>K VI2023G0018<br>K VI2023G0019<br><br>Sobre:<br>Ley 168 Art. 6.20<br>Ley 168 Art. 6.05<br>Ley 168 Art. 6.14<br>A 2cs<br>Art. 93 D C.P.<br>1ER GR<br>Tent. Art. 93 D<br>C.P. 1ER GR |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

Adames Soto, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 15 de enero de 2025.

Comparece el Sr. Jesús Ricardo Ubri Custodio (señor Ubri Custodio o el peticionario), mediante recurso de *certiorari* solicitando que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 19 de septiembre de 2024, en la que se denegó su solicitud para añadir a la Lcda. María S. Sáez Matos, (licenciada Sáez Matos), abogada de la Sociedad para la Asistencia Legal (SAL), como parte de su representación legal.

Examinado el tracto procesal, la argumentación de las partes y los fundamentos expuestos en la *Resolución* recurrida, decidimos *Denegar* expedir el recurso de *certiorari* solicitado.

a.

Por hechos alegadamente acaecidos el 12 de noviembre de 2022, se le imputó al señor Ubri Custodio infracción al Art. 93 D del Código Penal de Puerto Rico, 33 LPRA sec. 5142, y otra en modalidad de tentativa, además de violentar los artículos 6.05, 6.14 (2c) y 6.20 de la Ley de Armas de Puerto Rico de 2020, 25 LPRA secs. 466d, sec. 466m y 466s de la Ley Núm. 168-2019, conocida como la Ley de Armas de Puerto Rico de 2020.

El 8 de marzo de 2023, el TPI celebró la vista de causa probable para arresto[1] en ausencia, determinando *Causa* para continuar los procedimientos. En esta vista el peticionario estuvo representado por el Lcdo. Enrico Rodríguez González, de la práctica privada. No obstante, posteriormente el foro recurrido relevó al referido abogado de la representación del peticionario, al así haber sido solicitado por el primero.

Al próximo mes fue celebrada la vista de causa para acusar[2], en la que el peticionario fue representado legalmente por las licenciadas Rosa Falcón Díaz (licenciada Falcón Díaz), y Sáez Matos, ambas de la SAL.

Posterior a que fueran presentadas las acusaciones, mediante moción presentada por las mismas representantes legales de la SAL, al amparo de la Regla 64(n)(4) de Procedimiento Criminal, 34 LPRA Ap. II, R. 64(n)(4), el señor Ubri Custodio esgrimió infracción al término de juicio rápido, por la omisión del Ministerio Público de cumplir con el descubrimiento de prueba de manera oportuna. Ante ello, el 26 de junio de 2023, el TPI acogió la solicitud del peticionario, por lo cual desestimó las acusaciones que pesaban en su contra.

Sin embargo, el Ministerio Público volvió a presentar las seis denuncias que pesaban contra el peticionario, lo que dio lugar a que, el 24 de agosto de 2023, fuera celebrada otra vista de causa probable para acusar, en la que se encontró *Causa*.

---

[1] Regla 6 de Procedimiento Criminal, 34 LPRA Ap. II, R. 6.
[2] Regla 23 de Procedimiento Criminal, 34 LPRA Ap. II, R. 23.

Como se verá, en este nuevo procedimiento el peticionario fue representado legalmente por abogados distintos a los que le habían asistido, esta vez, por el Lcdo. Luis Viera Centeno y la Lcda. Teresa Velázquez Guardiola, ambos también de la SAL.

Superadas las etapas previas al juicio, el 12 de octubre de 2023 se inició este, mediante jurado, cuyas vistas se extendieron a lo largo de varios días, conducido ante la Hon. Alexandra Rivera Sáez. Luego de que el Ministerio Fiscal diera por sometido el caso, expuestos por las partes sus respectivas argumentaciones finales y dadas las instrucciones al jurado, este no pudo alcanzar un veredicto unánime, por lo que, a petición de la defensa, a la que se allanó el Ministerio Público, el 6 de marzo de 2024, el foro recurrido ordenó: (1) la disolución del jurado[3]; (2) la celebración de un nuevo juicio.

De conformidad, el TPI pautó el 9 de abril de 2024 como la fecha para iniciar la selección de jurado en el nuevo juicio, a la cual el peticionario acudió siendo representado por los mismos abogados del primer juicio, el licenciado Viera Centeno y la licenciada Velázquez Guardiola de la SAL. No obstante, tal selección del jurado no aconteció según pautada, al foro primario dar lugar a la consideración de una petición de *habeas corpus* instada por la defensa.

A lo anterior se une que, el 10 de abril de 2024, el señor Ubri Custodio también instó una moción de supresión de identificación ante el TPI, a través del licenciado Viera Centeno.

A los pocos días, el 15 de abril de 2024, la misma parte también solicitó la inhibición de la juez que se encontraba atendiendo los procedimientos, Hon. Alexandra Rivera Sáez, al atribuirle haber tenido contacto con la prueba en el primer juicio celebrado, que también presidió. Como resultado, el asunto fue referido a la atención de otro juez que, el 1 de mayo de 2024, *Denegó* la petición de inhibición.

---

[3] Regla 144(c) de Procedimiento Criminal, 34 LPRA Ap. II, Regla 144(c).

Por otra parte, la petición de *habeas corpus* fue declarada *Con Lugar*, ordenándose la excarcelación del señor Ubri Custodio.

Inconforme con la determinación sobre la solicitud de *habeas corpus*, el Ministerio Público acudió a este Foro intermedio, mediante recurso de *certiorari*, que tuvo como consecuencia que expidiéramos el auto solicitado y revocáramos el dictamen recurrido, mediante *Sentencia* de 30 de mayo de 2024, KLCE202400472.

A su vez, atendida la moción de supresión de identificación pendiente, el foro recurrido la declaró *No Ha Lugar*, lo que provocó que esta vez la defensa acudiera ante nosotros mediante recurso de *certiorari*. Sin embargo, mediante *Resolución* de 24 de junio de 2024, decidimos *Denegar* expedir el recurso solicitado, KLCE202400617.[4]

Es así como, el 28 de junio de 2024, el licenciado Viera Centeno, abogado de la SAL, que había representado al señor Ubri Custodio hasta este momento, presentó una moción ante el TPI informando: (1) que había renunciado a la SAL y; (2) que el caso sería asignado a un nuevo abogado, según así fue conversado con la Directora Regional de la SAL, la licenciada Belmar Jiménez.

A raíz de lo anterior, según lo revela la *Minuta*[5] sobre los procesos pertinentes a la vista de 1 de julio de 2024, llamado el caso en horas de la mañana compareció el peticionario sin su hasta entonces abogado, el licenciado Viera Centeno, pero sí estuvo presente la Directora Regional de la SAL, licenciada Belmar Jiménez, quien informó sobre la *abrupta* renuncia del primero, por lo que no podía informar aun sobre la persona que asumiría la representación legal del peticionario, advirtiendo que, quien resultara designado, tendría que examinar todas las ocurrencias de este caso y un voluminoso expediente. Ante ello, el foro recurrido dejó sin efecto los señalamientos que tenía pautado para la continuación del nuevo

---

[4] De nuestra determinación el peticionario acudió ante el Tribunal Supremo mediante recurso de *certiorari*, sin embargo, por encontrarse dicha Curia igualmente dividida, prevaleció la determinación recurrida.
[5] Anejo XXVIII del recurso de *certiorari*, págs. 248-249.

juicio. En la misma *Minuta* se hizo constar que, en horas de la tarde, compareció el licenciado Viera Centeno, momento en el cual el Tribunal lo relevó formalmente de continuar con la representación legal del peticionario.

El 15 de julio de 2024 se celebró una vista sobre el estatus de los procedimientos, en la cual fueron discutidos los puntos esenciales de la controversia ante nuestra atención.[6] La licenciada Belmar Jiménez, como Directora Regional de la SAL, y la licenciada Velázquez Guardiola estuvieron presentes, así como los representantes del Ministerio Público. En lo esencial, la licenciada Belmar Jiménez indicó que, habiendo renunciado el licenciado Viera Centeno a la SAL, se vio precisada a designar a la licenciada Velázquez Guardiola como representante del peticionario, quien, *a pesar de no haber estado en todos los señalamientos, sí estuvo presente en los testimonios considerados como los más importantes*[7], (del primer juicio celebrado). Junto a dicha abogada, también se había determinado designar a la licenciada Sáez Matos, pues ya había representado al peticionario en el primer proceso que resultó desestimado.

En respuesta, el Ministerio Público se opuso a la designación de la licenciada Sáez Matos, advirtiendo que ello provocaría la inhibición de la juez que presidía los procesos, Hon. Alexandra Rivera Sáez, al ser estas primas hermanas. Aludió y describió la etapa adelantada de los procesos como causa para no permitir que se provocara la inhibición de la juez, y manifestó que *no quería pensar* que tal designación de la abogada fuera un subterfugio para tratar de inhibir a la juez en este caso, cuando anteriormente la defensa ya lo había intentado.

La licenciada Belmar Jiménez ripostó que el nombramiento de la licenciada Sáez Matos obedecía al hecho de que había representado previamente al peticionario en el mismo caso, velando por los mejores

---

[6] Anejo LXXXII del recurso de *certiorari*, págs. 254-255.
[7] *Íd.*

intereses del cliente, y si hubiese sido la intención lograr la inhibición de la juez el nombramiento hubiese acontecido antes.

Entonces, advirtiendo la juez Rivera Sáez que no podía participar en un caso donde figurara como abogada su prima, le concedió término al Ministerio Público para que hiciera su petición mediante moción, y término a la defensa para oponerse.

A fin de cuentas, el 29 de julio de 2024, la licenciada Sáez Matos presentó ante el TPI autorización para representar al peticionario. Sin embargo, mediante *Resolución* de 31 de julio de 2024, la Hon. Alexandra Rivera Sáez determinó que no aceptaba dicha representación legal, de conformidad con la norma que prohíbe que, una vez un juez ha comenzado a intervenir en un caso, se una un abogado cuya intervención produzca su inhibición.[8]

En consecuencia, la licenciada Belmar Jiménez instó oportuna y fundamentada *Moción de reconsideración*. En la sección que denominó *derecho aplicado a los hechos:* (1) llamó la atención a que el TPI aludiera como causa de inhibición a una regla procesal civil, en el contexto de un proceso criminal, en el cual media el derecho constitucional del peticionario a la asistencia legal; (2) el mejor interés para la defensa del peticionario requiere asignar dos abogadas para representarle en el juicio; (3) la licenciada Sáez Matos representó al peticionario en el primer proceso e interrogó a la única testigo presencial de los hechos; (4) dicha abogada tiene la confianza del peticionario por sus ejecutorias, para lo cual aludió a varias expresiones de este al respecto; (5) aunque entiende legítima la consideración sobre el efecto que tendría en el caso la inhibición de la juez, juzga que se encuentran en una etapa temprana del juicio, la desinsaculación del jurado.

Por su parte, el Ministerio Público presentó moción replicando la solicitud de reconsideración. Acentuó que, desde el 1 de julio de 2024,

---

[8] Anejo LXXXIX del recurso de *certiorari*, pág. 264.

ante la solicitud de término por la licenciada Belmar Jiménez para anunciar nueva representación legal, el propio Tribunal le advirtió que no se podría designar a la licenciada Sáez Matos pues está en la lista de preinhibiciones de la juez Rivera Sáez. Que fue la propia SAL quien, para el segundo proceso, decidió asignarle el caso al licenciado Viera Centeno, en conjunto con la licenciada Velázquez Guardiola, en lugar de asignárselo nuevamente a la licenciada Sáez Matos, o a la licenciada Falcón Díaz, quien también había representado al peticionario en el primer proceso. Que la licenciada Velázquez Guardiola ha estado representando al peticionario desde el inicio del segundo proceso. Que la SAL ya había solicitado previamente la inhibición de la juez Rivera Sáez, sin éxito. Finalmente, discurrió sobre los efectos negativos tangibles en el estado de los procedimientos que supondría la inhibición de la juez.

Es así como, mediante una muy fundamentada *Resolución*, el 19 de septiembre de 2024, el TPI declaró *No Ha Lugar* la moción de reconsideración pendiente, por lo que se reiteró en su dictamen de no permitir que la licenciada Sáez Matos entrara a formar parte de la representación legal del peticionario en esta etapa de los procesos.

Con el ánimo de resaltar varias de las expresiones plasmadas por el Tribunal en las *Conclusiones de derecho* contenidas en la referida *Resolución*, valga aludir a las siguientes: la juez inició resaltando que tiene el caso asignado desde septiembre de 2023, habiendo presidido en el primer juicio; no es la primera vez que la defensa solicita su inhibición, ya antes denegada por ausencia de razones para concederla; que le sorprende el argumento sobre la alegada relación de confianza entre el peticionario y la licenciada Sáez Matos, como causa para permitirle asumir la representación legal en este segundo juicio, cuando esta no fue la elegida para continuar representándolo una vez se desestimó la primera acusación; el acusado no tiene derecho a elegir un representante en particular, sino a la asistencia legal que sea adecuada y eficaz, que en este

caso se consigue a través de la licenciada Velázquez Guardiola, quien es una abogada experimentada, con más de veinte años de experiencia y participó en el juicio anterior, además de la desinsaculación del jurado en curso; que le resulta un deber ético evitar incurrir en actos que puedan motivar su recusación, como lo sería en este caso admitir a la licenciada Sáez Matos que se una a la representación legal del peticionario; aludió a la dilación que provocaría en el proceso un cambio de juez.

Juzgando que el foro primario incidió al así decidir, el peticionario acude ante nosotros mediante recurso de *certiorari*, planteando un solo error, a través del cual nos solicita la revocación del dictamen recurrido. En definitiva, asevera el peticionario que la única manera de evitar que se le violente su derecho a tener asistencia legal adecuada en este caso es permitiéndole a la licenciada Sáez Matos asumir su representación legal.

Habiendo requerido este Foro intermedio al Ministerio Público que se expresara acerca del escrito presentado por el peticionario, este compareció mediante *Escrito en cumplimiento de orden*, representado por la Oficina del Procurador General de Puerto Rico.

Finalmente, el 14 de enero de 2025, el señor Ubri Custodio acudió nuevamente ante nosotros, mediante *Moción urgente solicitando paralización de los procedimientos*. Este solicitó el remedio contenido en dicha moción, advirtiéndonos que hay una vista pautada para celebrarse en dos días, el 16 de enero de 2025.

Contando con los escritos de las partes y la documentación pertinente a la controversia ante nuestra atención, estamos en posición de disponer del asunto.

b.

El auto de *certiorari* permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *800 Ponce de León Corp. v. American International Insurance*, 205 DPR 163, 174 (2020); *Municipio Autónomo de Caguas v. JRO Construction*, 201 DPR 703, 710 (2019);

*Medina Nazario v. McNeil Healthcare LLC.*, 194 DPR 723, 728 (2016). Es, en esencia, un recurso extraordinario mediante el cual se solicita al tribunal de superior jerarquía la corrección de un error cometido por el tribunal inferior. *García v. Padró*, 165 DPR 324, 334 (2005). La expedición del auto descansa en la sana discreción del tribunal y encuentra su característica distintiva, precisamente, en la discreción encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. *Municipio Autónomo de Caguas v. JRO Construction, supra,* en la pág. 711; *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012).

Dispone la Ley Núm. 201–2003, Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, en su Art. 4.006 (b), que nuestra competencia como Tribunal de Apelaciones se extiende a revisar discrecionalmente órdenes y resoluciones emitidas por el Tribunal de Primera Instancia. Al amparo de lo anterior, nuestro Tribunal Supremo ha manifestado, en lo pertinente, que la parte afectada por alguna orden o resolución interlocutoria en un proceso penal puede presentar un recurso de *certiorari* mediante el cual apele el dictamen interlocutorio del foro primario. *Pueblo v. Román Feliciano*, 181 DPR 679, 690 (2011). Cónsono con lo cual, en los casos atendidos bajo el proceso criminal, la expedición de un auto de *certiorari* debe evaluarse a la luz de los criterios enumerados por la Regla 40 de nuestro Reglamento, según la cual:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

4 L.P.R.A. Ap. XXII-B, R. 40.

En síntesis, la citada Regla exige que, como foro apelativo, evaluemos si alguna de las circunstancias enumeradas está presente en la petición de *certiorari*. De observarse alguna de estas, entonces podríamos ejercer nuestra discreción e intervenir con el dictamen recurrido.

Con todo, se ha de advertir que, a pesar de que reconozcamos una de las situaciones previstas en la Regla 40, supra, -que nos habilitaría para expedir el *certiorari*-, tal ejercicio continúa siendo uno discrecional. Según lo explicó nuestro Tribunal Supremo, *la amplitud del recurso moderno de certiorari no significa que sea equivalente a una apelación, pues sigue siendo discrecional y los tribunales debemos utilizarlo con cautela y por razones de peso. Pueblo v. Díaz De León*, 176 DPR 913,918 (2009). El concepto discreción necesariamente implica la facultad de elegir entre diversas opciones. *IG Builders et al. v. BBVAPR, supra, pág. 338.*

Claro, el uso de la *discreción* aludida no supone un ejercicio arbitrario por parte de este foro revisor en la determinación sobre si expedir o no el recurso de *certiorari*, pues, en el ámbito judicial tal nomenclatura *no debe hacer abstracción del resto del Derecho*, sino que se concibe como *una forma de razonabilidad aplicada al discernimiento judicial para llegar a una condición justiciera. Íd.*

c.

En su recurso el peticionario alude al derecho constitucional que le cobija para contar con la asistencia de un abogado para su defensa, según así es concebido tanto por la Constitución de los Estados Unidos[9], y la de Puerto Rico[10], como fuente de derecho para elegir a la licenciada Sáez Matos con su representante legal en la continuación del nuevo juicio

---

[9] Enmienda VI de la Constitución de los Estados Unidos.
[10] Art. II, Sec. 11 de la Constitución del Estado Libre Asociado de Puerto Rico.

iniciado en su contra. Según lo había planteado ante el TPI en varias ocasiones, este aduce que dicha letrada es la más indicada para representarlo, en tanto participó en la primera parte del proceso criminal iniciado en su contra, que concluyó con la desestimación de las acusaciones. Une a lo anterior que le representa una desventaja en el proceso que recién inicia, el hecho de que los fiscales del Ministerio Público que están atendiendo el nuevo juicio han sido los mismos letrados que ha comparecido durante todos los procesos seguidos en su contra. A esto añade que resulta injusto que no se le provea la oportunidad de contar con una de las abogadas que ya participó en el primer proceso llevado en su contra, y conoce la prueba, la licenciada Sáez Matos. Concluye afirmando que su debido proceso de ley quedaría lacerado de este Foro intermedio sostener la denegatoria del TPI de permitir que la licenciada Sáez Matos asuma su representación legal para el nuevo juicio.

Contrario a ello, el Procurador General esgrime que la determinación del TPI estuvo basada en su interés por mantener la integridad de los procesos, lo que no podría acontecer si permitiera la intervención de la licenciada Sáez Matos en esta etapa de los procesos, de quien la juez que preside el juicio es prima. Apunta al hecho de que la Directora de la SAL estuvo advertida por el propio Tribunal sobre el efecto que tendría en el proceso la elección de la licenciada Sáez Matos para continuar el nuevo juicio, (la inevitable inhibición de la juez que se encuentra presidiéndolo, por causa de parentesco y la interrupción de un juicio ya iniciado), antes de que esta última presentara la moción para ser admitida como abogada del peticionario en el nuevo juicio. Acentúa que el derecho a la representación legal adecuada no se lesiona en este caso, en tanto el peticionario continuará siendo representado por la SAL, a través de la licenciada Velázquez Guardiola, quien ya había comparecido al caso y fungió como abogada durante el primer juicio, junto al licenciado Viera Centeno, letrada que cuenta con muchos años de experiencia. Advierte

que el derecho constitucional a la asistencia a abogado no es absoluto, y, por ello, no requiere la elección de un abogado en particular, sino de una representación adecuada, la cual en este caso el peticionario continuará teniendo a través de la licenciada Velázquez Guardiola, por lo explicado en la oración que precede. Coincidimos con el Procurador General.

d.

Según señalamos en la exposición de derecho, como foro revisor nos corresponde determinar si en el caso ante nuestra atención acontece algunos de los criterios enumerados en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, que justifiquen nuestra intervención con el dictamen recurrido. Realizado tal análisis, no apreciamos que estén presentes las causas que justificarían tal intervención con la resolución interlocutoria cuya revocación se nos solicita. Es decir, juzgamos que la determinación del TPI, al denegar la solicitud de la licenciada Sáez Matos para unirse a la defensa del peticionario en el juicio ya iniciado, no resulta contraria a derecho, sino que cuenta con fundamentos legales que la sostiene, con los cuales coincidimos, y cabe reconocerla como el ejercicio de un buen discernimiento del foro recurrido. Tampoco atisbamos grado alguno de prejuicio, parcialidad o error manifiesto en dicho dictamen, ni que se pudiera causar un fracaso de la justicia al no permitirle al peticionario escoger a la referida letrada para continuar su defensa en el nuevo juicio, cuando no existe controversia real alguna sobre la adecuada representación legal que continuará gozando a través de la licenciada Velázquez Guardiola.

Cabe recalcar que el dictamen recurrido es uno de aquellos que descansan en la sana discreción del tribunal *a quo*, y, aunque resulte reiterativo, observamos en la *Resolución* recurrida un ejercicio razonado de dicho foro al sopesar los intereses en juego y aplicar el Derecho correspondiente. En consecuencia, no advertimos abuso de discreción alguno en la *Resolución* recurrida que justifique nuestra intervención, de

modo que procede denegar expedir el recurso de *certiorari* presentado y permitir que los asuntos continúen su curso sin interrupción.

**Parte dispositiva**

Por las razones que anteceden, *Denegamos* la expedición del auto de *certiorari* solicitado y declaramos *No Ha Lugar* la solicitud de paralización de los procesos.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria. El juez Bermúdez Torres declararía Ha Lugar la moción en auxilio de jurisdicción presentada por el peticionario, por lo que ordenaría la paralización de los procedimientos, y expediría el Auto para revocar el dictamen recurrido. En consonancia, el mismo juez disiente de la decisión mayoritaria, emitiendo el voto escrito que se adjunta.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>JESÚS RICARDO UBRI CUSTODIO<br><br>Peticionario | KLCE202401141 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de San Juan en Caguas<br><br>Caso Núm.<br>K LA2023G0137 al<br>K LA2023G0140<br>K VI2023G0018<br>K VI2023G0019<br><br>Sobre:<br>Ley 168 Art. 6.20<br>Ley 168 Art. 6.05<br>Ley 168 Art. 6.14<br>A 2cs<br>Art. 93 D C.P.<br>1ER GR<br>Tent. Art. 93 D<br>C.P. 1ER GR |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora



## VOTO DISIDENTE DEL JUEZ BERMÚDEZ TORRES

Salvo cuestiones de énfasis, no identifico mayores discrepancias con la relación procesal y fáctica expuestas en la Ponencia mayoritaria. Sin embargo, a través de este disenso, expongo las razones por las que creo que ha debido expedirse el Auto solicitado y revocarse el dictamen recurrido. De paso, planteo una serie de interrogantes que no han sido atendidas por mis reputados compañeros de Panel.

### I.

La Sociedad para la Asistencia Legal (SAL), a través de las licenciadas Rosa Falcón Díaz y María S. Sáez Matos, proveyó representación legal al Sr. Jesús Ricardo Ubri Custodio desde la etapa de la vista de causa para acusar[1]. Presentadas las correspondientes acusaciones, las licenciadas Falcón Díaz y Sáez Matos lograron que se

---

[1] Regla 23 de Procedimiento Criminal, 34 LPRA Ap. II, R. 23.

desestimaran los cargos, tras plantear, con éxito, violación de los términos de juicio rápido.[2]

Reiniciado el proceso con una segunda determinación de causa probable para acusar el 24 de agosto de 2023, los abogados de la SAL, el Lcdo. Luis Viera Centeno y la Lcda. Teresa Velázquez Guardiola, asistieron en la defensa de Ubri Custodio hasta la etapa del juicio. Concluido dicho juicio, el que fue presidido por la Hon. Alexandra Rivera Sáez, el Jurado no logró alcanzar un veredicto unánime dando paso a su disolución.

A petición del Ministerio Público, se ordenó un nuevo juicio. En el inicio de este segundo juicio y, según nuestro orden penal, última oportunidad del Estado en procesar a Ubri Custodio, este compareció representado por los mismos abogados que le asistieron anteriormente, es decir, el licenciado Viera Centeno y la licenciada Velázquez Guardiola. Entre otras incidencias procesales, Ubri Custodio solicitó la inhibición de la jueza Rivera Sáez. Argumento, como cuestión de derecho, que, por la jueza haber presidido el primer juicio estaba impedida de presidir el segundo juicio. Referido el asunto a la atención de otro juez, correctamente se denegó la petición de inhibición.[3]



Tras algunos incidentes procesales, el 28 de junio de 2024, el licenciado Viera Centeno, uno de los dos abogados que había representado a Ubri Custodio hasta entonces, renunció a SAL y en su lugar, la SAL designó a la licenciada Velázquez Guardiola para que representara a Ubri Custodio. Junto a dicha abogada, también se designó a la licenciada Sáez Matos, pues ya había representado a Ubri Custodio en el primer proceso que resultó desestimado. El Ministerio Público se opuso a la designación de la abogada Sáez Matos, aduciendo que, por esta ser prima hermana de la jueza Rivera Sáez, ello provocaría la inhibición de la jueza.

---

[2] Regla 64(n)(4) de Procedimiento Criminal, 34 LPRA Ap. II, R. 64(n)(4).
[3] En este momento Ubri Custodio fue liberado de prisión tras el Tribunal de Primera Instancia dar paso a una petición de *habeas corpus*. Mediante *Sentencia* de 30 de mayo de 2024, KLCE202400472, revocamos dicho dictamen.

Acogiendo la postura del Ministerio Público, la jueza Rivera Sáez descalificó a la licenciada Sáez Matos como representante legal del acusado Ubri Custodio.

Al denegar expedir el Auto y de esa forma, avalar la actuación recurrida, mis estimados compañeros de Panel destacan algunas razones esgrimidas por la jueza Rivera Sáez en su *Resolución* rechazando la representación legal de la licenciada Sáez Matos. Aluden, en primer lugar, a que la jueza tiene el caso asignado desde septiembre de 2023 y que, además, presidió el primer juicio. Mencionan que, anteriormente la Defensa de Ubri Custodio había procurado la inhibición de la jueza sin razón para ello.



Tal y como intimó la jueza Rivera Sáez, mis compañeros restan valor a la relación de confianza entre el acusado y la licenciada Sáez Matos que ofreció la SAL como razón para designar a la letrada al caso. Indican que ello no fue razón para designarla en el caso anterior. Añaden, que el acusado no tiene derecho a elegir un representante en particular, sino a que la asistencia legal sea adecuada y eficaz, cosa que en este caso está garantizada a través de la codefensora Velázquez Guardiola. Finalmente, refrendan que, es parte del deber ético de un juez impedir actos que puedan motivar su recusación, como lo es aceptar la representación legal de un abogado en un caso penal, si eso tiene como consecuencia la recusación del juez.[4]

## II.

No puedo coincidir con el criterio mayoritario. Distinto a ellos, estimo que, en este caso, la determinación de la distinguida jueza de instancia es errada en derecho e incide negativamente sobre los derechos

---

[4] La invocación del inciso (d) de la Regla 63.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 63.2, no es correcta. Al prohibirse que se unan abogados al pleito una vez comenzado el caso con el potencial de que ello ocasione la recusación del juez, se buscó evitar la indeseable práctica *judge shopping* o selección de jueces en los casos civiles. Véase, *Informe de Reglas de Procedimiento Civil, Secretariado de la Conferencia Judicial y Notarial del Tribunal Supremo de Puerto Rico*, marzo de 2008, pág. 741. Las grandes diferencias del derecho a representación legal aplicable al ámbito criminal frente a los casos en el ámbito civil nos llevan a cuestionar la aplicabilidad de esta disposición legal como intimó el Tribunal de Primera Instancia.

fundamentales del acusado a asistencia de abogado y a un juicio justo e imparcial, entre otros aspectos de gran importancia. Estoy plenamente convencido de que no corregir este error constituye un claro fracaso de la justicia. Elaboro.

A.

Tanto nuestra Constitución de los Estados Unidos de América[5] como la Constitución estatal[6] reconocen como derecho fundamental de todo acusado a un juicio justo e imparcial y a estar asistido de abogado. La intricada relación entre estos derechos estriba en que el derecho a representación legal en un caso penal es consustancial al derecho a un juicio justo. Por ello se considera un principio básico de justicia[7] y parte fundamental de la cláusula del debido proceso de ley.[8] Tan trascendental es este derecho, que su violación conlleva la revocación de la sentencia condenatoria.[9] Distinto al ámbito civil, en el que no existe el derecho a los litigantes a asistencia de abogado,[10] ni a seleccionar a un abogado de su predilección,[11] las repercusiones que tiene un proceso criminal sobre la libertad de un individuo elevan jerárquicamente el interés de un acusado a escoger un abogado de su confianza para que le represente.

Lo anterior no riñe con la norma de que un acusado al que, por su indigencia, el Estado está obligado a proveerle representación de oficio, no puede exigir que se le designe un abogado en particular.[12] En circunstancias distintas, en que el acusado desee representarse por derecho propio[13] o puede contratar su representación legal por tener los

---

[5] Véase Emda. VI, Const. EE. UU., LPRA, Tomo 1 (Extendido a los estados a través de la Decimocuarta Enmienda de la Constitución federal).
[6] Art. II, Sec. 11, Const. PR, LPRA, Tomo 1.
[7] *Griffin* v. *Illinois*, 351 US 12 (1956).
[8] *Pueblo* v. *Moreno González*, 115 DPR 298 (1984); *Pueblo* v. *Gordon*, 113 DPR 106 (1982).
[9] *Chapman* v. *California*, 386 US, 18, 23 (1967); *Gordon*, 113 DPR en la pág. 108.
[10] *Lizarríbar* v. *Martínez Gelpí*, 121 DPR 770, 785 (1988).
[11] *Otaño* v. *Vélez*, 141 DPR 820 (1996); *Sánchez Acevedo* v. *E.L.A.*, 125 DPR 432 (1990), *In re Vélez*, 103 DPR 590 (1975).
[12] Véase *United States* v. *González-López*, 548 U.S. 140, 151 (2006); *Pueblo* v. *Pardo Toro*, 90 DPR 635 (1964); *Gideon* v. *Wainwright*, 372 U.S. 335 (1963); *Serrano* v. *Delgado*, 80 DPR 221 (1958).
[13] En *Pueblo* v. *Cruzado*, 161 D.P.R. 840 (2004), el Tribunal Supremo distinguió la situación de un acusado indigente a quien se le designa abogado de oficio de otro que desea auto representarse. Expresó, que, aunque "el derecho a asistencia de abogado no

medios económicos para así hacerlo, o es representado por la SAL, los tribunales no debemos interferir con la decisión de, a quién el acusado contrata[14] o a cuál de sus abogados la SAL designa para la defensa.[15]

Precisamente, este caso trata de un acusado que es representado por la SAL, una organización proveedora de representación gratuita a imputados y acusados indigentes, con autonomía para, entre otras cosas, escoger cuál de sus abogados representará a uno de sus clientes a través del proceso penal.[16] Presumiblemente, son muchos los factores que convergen en la toma de esa decisión, pero ninguno es, ni puede ser, de la inherencia del tribunal. En tal sentido, me parece que inflige el derecho que asiste a Ubri Custodio de asistencia de abogado y a escoger quien le represente, el que el tribunal interfiera con la prerrogativa que tiene SAL de asignarle determinado abogado de su oficina con exclusión de algún otro de sus integrantes.[17]



quiere decir el derecho a la asistencia de un abogado particular", es otra la situación cuando el acusado solicita la renuncia de su abogado para proceder a defenderse por derecho propio. Esto es así toda vez que, aunque no existe el derecho a que a un acusado indigente se le asigne el abogado de su predilección, sí existe el derecho a que todo acusado se autorreprese siempre que cumpla con ciertos requisitos jurisprudenciales, y el tribunal así lo reconozca.

[14] "[U]n elemento del derecho a un abogado de la Sexta Enmienda es el derecho de un acusado que **no requiere un abogado designado** a **elegir** quién lo representará". *González-López*, 548 U.S. en la pág. 144 (citando a *Wheat* v. *United States*, 486 U.S. 153, 108 S. Ct. 1692 (1988)); Esta Enmienda garantiza el derecho a ser representado por un abogado calificado que el acusado pueda contratar, o que esté dispuesto a representarlo, aunque no tenga fondos. *Id.* en las págs. 144-151 (citas omitidas) (Traducción suplida) (Énfasis nuestro).

[15] Según la Regla 2 sobre Alcance y extensión del Reglamento para la Asignación de Abogados y Abogadas de Oficio en Procedimientos de Naturaleza Penal, se asignará un abogado o una abogada de oficio **sólo cuando la persona sometida a tal procedimiento sea indigente, no pueda ser representada por la Sociedad para la Asistencia Legal**, por la entidad sin fines de lucro designada para representar menores de edad o por cualquier entidad análoga competente, y no haya renunciado expresamente a su derecho a la asistencia de abogado o abogada.

Entonces, la facultad del foro primario en negarle a Ubri Custodio la asistencia de abogado de su elección, y a su vez interferir con la autonomía de SAL en la asignación de abogados para sus clientes como organización privada, no es irrestricta.

[16] La Sociedad para la Asistencia Legal Inc., se fundó y organizó anclada en la Sec. 11 de nuestra Carta de Derechos, con el fin de "promover la justicia para los insolventes económicos, facilitándoles servicios de abogado para garantizar la igual protección de las leyes y para alentar la fe en la justicia". A su vez, dicha Sociedad operaría como una corporación sin fines de lucro. *González* v. *Alicea, Dir. Soc. Asist. Legal*, 132 DPR 638, 640 (citando los Artículos de Incorporación de SAL).

[17] Lo anterior no releva al tribunal de su deber de velar porque los procesos criminales se conduzcan dentro de los estándares éticos de la profesión legal y, sobre todo, que aparenten ser justos ante el público. Véase: LaFave et al., 3 Criminal Procedure sec. 11.9(c) (4ta ed.) (noviembre 2021).

B.

La razón en la que se basó el tribunal *a quo* para descalificar a la licenciada Sáez Matos, es decir, su relación de parentesco con la letrada, no altera en nada mi percepción ni criterio. Parto de la premisa de que la comparecencia de la licenciada Sáez Matos en representación del acusado en el juicio presidido por la jueza con quien tiene lazos de parentesco, constituye un conflicto de intereses insalvable que lacera la apariencia de un juicio justo. Sin embargo, estoy igualmente convencido de que, el mismo conflicto subsiste ante el hecho de que la jueza permanezca presidiendo un juicio en el que la organización -SAL-, para la que trabaja su pariente -Lcda. Sáez Matos-, representa al acusado. Ante los ojos del público y el acusado, su objetividad e imparcialidad se verá igualmente comprometida por el hecho de que el acusado esté representado por la entidad de la que es empleada su pariente. En ambas circunstancias debe imperar la misma prudencia judicial.

Y si, para fines de argumentación el acusado lograra obtener los recursos económicos para contratar abogado privado, ¿estaría impedido de contratar a un abogado de su preferencia, porque potencialmente la jueza tuviera que inhibirse? ¿Acaso el deseo legítimo de un juez en presidir un juicio tiene más peso que el derecho fundamental del acusado a escoger su representación legal? En mi opinión, la respuesta es sencillamente, no. Además de que no existe el derecho constitucional ni estatutario de un juez a presidir un juicio, en casos como el presente existen alternativas menos lesivas al derecho fundamental del acusado a escoger su representación legal, como sería, trasladar el caso a otra sala para que otro juez presida el juicio.

De otro lado, en cuanto al fundamento utilizado por el tribunal recurrido para excluir a la licenciada Sáez Matos del caso, es decir, la garantía de una futura representación legal adecuada por parte de la codefensora Velázquez Guardiola constituye, precisamente, la confusión

que el Tribunal Supremo Federal expresó que existía entre **derecho a la elección de un abogado** y el **derecho a la asistencia efectiva de un abogado**. Posterior a *Wheat v. U.S.* 486 US 153 (1988), en el que se dio énfasis a que "el objetivo esencial de la Enmienda [sexta] es garantizar un abogado eficaz para cada acusado penal en lugar de garantizar que un acusado se[a] inexorablemente representado por el abogado a quien prefiere",[18] en *United States v. González-López*, 548 US 140 (2006) el mismo Tribunal Supremo federal precisó que:

> **[C]uando se niega injustamente el derecho a ser asistido por un abogado de su elección, no es necesario realizar una investigación de ineficacia o prejuicio para establecer una violación de la Sexta Enmienda.**
> La privación del derecho es "completa" cuando por error se impide al imputado ser representado por el abogado que desea, **independientemente de la calidad de la representación que recibió. Argumentar lo contrario es confundir el derecho a un abogado de elección, que es el derecho a un abogado en particular, independientemente de su eficacia comparativa, con el derecho a un abogado eficaz, que impone un requisito básico de competencia sobre cualquier abogado elegido o designado.**[19]

En otras palabras, la denegación errónea de la asistencia de un abogado no está sujeta al análisis de prejuicio para determinar la eficacia de su desempeño.[20] La Sexta Enmienda se viola cuando la descalificación errónea de un abogado "perjudica la asistencia que un acusado recibe en el juicio del abogado que este eligió".[21] Fue más contundente en sus expresiones el máximo Tribunal de la Nación al acotar, que, la privación errónea por parte del foro primario de la elección de abogado de un acusado penal le da derecho a la revocación de su condena bajo la doctrina de *structural error*.[22] Como sabemos, dentro de la amplia doctrina



---

[18] *Wheat v. U.S.* 486 US 153, 159 (1988).
[19] *United States v. González-López*, 548 US 140, 148 (2006).
[20] *Id.*
[21] *Id.*, en la pág. 162 n.2. (Traducción suplida) (Como si lo anterior fuese insuficiente, me parece una inútil especulación a los fines de evaluar la presente controversia, aseverar que Ubri Custodio estará adecuadamente representado en el juicio por la licenciada Velazquez Guardiola. Ni SAL, ni la jueza de primera instancia, ni mis compañeros jueces de Panel pueden, *a priori*, aseverar ni asegurar, que Ubri Custodio gozará de una adecuada representación legal en el juicio por jurado a celebrarse en el futuro. Eso será objeto de escrutinio una vez el juicio haya culminado y el acusado así lo planteare. No antes.) Véase *United States v. González-López*, 548 US 140 (2006).
[22] *Id.* en la pág. 150.

de revisión de errores en la admisión de evidencia, el error estructural es aquel tan perjudicial que provoca la revocación automática de la condena.[23] Su patente gravedad no permite la aplicación de la doctrina de *harmless error*.[24]

### C.

Finalmente, nos preocupa genuinamente que la decisión tomada por la jueza recurrida y que hoy avala la Mayoría de este Panel, abra las puertas para futuras controversias que hemos podido anticipar y evitar. Me parece que exponemos a la compañera jueza Rivera Sáez al peligro de señalamientos o imputaciones, innecesariamente. Dicha jueza, quien estará bajo el constante escrutinio de las partes y el público en la forma en que conduce los procedimientos, no tendrá espacio para la más mínima equivocación sin que se le atribuya prejuicios o parcialidad.

Igualmente, la abogada de la SAL corre el riesgo de que, ante un resultado adverso al acusado, se le cuestione su desempeño por cualquier tipo de error o desvío incidental en el proceso. Siempre estará presente ante los ojos del espectador y del acusado, que su actuación fue deficiente porque no contó con la ayuda de la compañera abogada designada por SAL, pero rechazada por el tribunal. Sería un escenario nefasto en perjuicio de la confianza en el sistema de justicia, que, por algún error del tribunal se tuviera que disolver el Jurado y decretar un *mistrial* en un segundo proceso, con la indeseable consecuencia de que el Estado pierda la oportunidad de procesar por tercera ocasión al señor Ubri Custodio por los cargos que se le imputan.



---

[23] Véase: Ernesto L. Chiesa Aponte, Derecho Procesal Penal de Puerto Rico y Estados Unidos, pág. 511 (1992).

[24] Se han denominado errores estructurales: 1) la privación del derecho a abogado; 2) un adjudicador parcializado; 3) denegación del derecho a representación por derecho propio; 4) denegación a un juicio público; 5) instrucciones incorrectas al jurado sobre la necesidad que se pruebe el delito más allá de duda razonable; y 6) privación del derecho constitucional a abogado en la primera apelación.

Por ello, con mucho respeto y deferencia hacia nuestra compañera jueza de primera instancia y mis apreciados compañeros de Panel, disiento.

En San Juan, Puerto Rico, a ___*15*___ de enero de 2025.

Abelardo Bermúdez Torres
Juez de Apelaciones